(3)    Notwithstanding any right or power that may be granted to the Tax Matters Partner under the Code or any other provision of law, the Tax Matters Partner shall not, without the approval of the Board or an individual designated by each Venturer for such purpose:

(a)    extend the statute of limitations on behalf of the Venture;

(b)    determine the Venture's choice of the forum for the litigation of any matter pertaining to the treatment of items of income, deduction or credit;

(c)    determine whether to appeal or not appeal any administrative or judicial determination;

(d)    enter into any settlement agreement with the Internal Revenue Service which purports to bind a Venturer other than the Tax Matters Partner; or

(e)    file any request for an administrative adjustment under Section 6228 of the Code.

(4)    Notwithstanding anything contained in this Section 12F to the contrary, the Tax Indemnity Agreement shall control any matters described in this Section 12F that are the subject of the Tax Indemnity Agreement.

G.    <u>Independent Accountants</u>.

The independent certified public accountants for the Venture shall be determined by the Board.

13.    <u>EXCULPATION AND INDEMNIFICATION OF VENTURERS</u>.

A.    <u>Exculpation</u>.

Neither Venturer, nor any Director or officer of the Venture, nor any member of a committee established pursuant to this Agreement, shall be liable to the Venture or to either Venturer for or as a result of any act, omission or error in judgment that was taken, omitted or made by it in the exercise of its judgment in good faith pursuant to the authorization granted to it under this Agreement or delegated to it pursuant to this Agreement that does not constitute gross negligence or willful misconduct.

B.    <u>Indemnification</u>.

(1)    (a)    To the extent that a corporation is permitted to indemnify its directors under the Code of Virginia, the Venture shall indemnify and hold harmless the Venturers, the

40

Directors, the officers of the Venture and the members of any committee established pursuant to this Agreement, from and against all costs, loss, damage and expense, including reasonable attorney's fees, arising out of or resulting from any act performed by such Venturer, Director, officer or member of any committee within the scope of the authority conferred upon it by this Agreement or delegated to it pursuant to this Agreement, except for acts of gross negligence or willful misconduct of such Venturer, Director, officer or member of any committee or for damages arising from any material misrepresentation by such Venturer, Director, officer or member of any committee.

(b)   To the extent that a corporation is permitted to indemnify its directors under the Code of Virginia, each Venturer shall indemnify and hold harmless the other Venturer, the Directors, the officers of the Venture and the members of any committee established pursuant to this Agreement, from and against all costs, loss, damage and expense, including reasonable attorney's fees, arising out of or resulting from any act performed by such Venturer, Director, officer or member of any committee within the scope of the authority conferred upon it by this Agreement or delegated to it pursuant to this Agreement, except for acts of gross negligence or willful misconduct of such Venturer, Director, officer or member of any committee.

(2)   Each Venturer shall indemnify and hold harmless the Venture and the other Venturer from and against all costs, loss, damage and expense, including reasonable attorney's fees, arising out of or resulting from any act performed by the indemnifying Venturer beyond the scope of authority conferred upon the indemnifying Venturer by this Agreement or by reason of any act of fraud, bad faith, gross negligence or willful misconduct.

14.   ASSIGNABILITY OF VENTURE INTERESTS AND WITHDRAWAL.

A.   Pledge or Encumbrance of Interest.

Except as provided in Section 5D(2), neither Venturer may pledge or encumber all or any part of its Interest, in any manner, whether voluntarily or involuntarily, by operation of law or otherwise, without the written consent of the other Venturer, which consent may be withheld in the sole discretion of the Venturer.  Any attempted pledge or encumbrance without the written consent of the other Venturer shall be void and of no force or effect.

B.   Disposition of Interest and Withdrawal.

(1)   (a)   Subject to Section 14C, neither Venturer shall withdraw or retire from, or dissolve, the Venture, or make a Disposition of all or any part of its Interest (except to a

41

Related Person of such Venturer in accordance with this Section 14B(1) if the transfer does not constitute a Change of Control) without the consent of the other Venturer, which consent may be withheld in the sole discretion of the other Venturer.   A Venturer may make a Disposition of all of its Interest to a Related Person of such Venturer, only if such Venturer and/or any Related Persons of such Venturer also simultaneously transfer to such Related Person their Venture Subsidiary Ownership Interest.

(b)   A Venturer may make a Disposition of all of its Interest to a Person that is not a Related Person of such Venturer after obtaining the requisite consent only if such Venturer and/or any Related Persons of such Venturer also simultaneously transfer to the transferee the Stock Ownership Interest and Venture Subsidiary Ownership Interest of that Venturer and its Related Persons.

(2)   (a)   For purposes of Section 14B, (i) a consolidation or merger or sale or other transfer of all or substantially all of the assets of a Venturer or of the Parent of a Venturer (except with or to a Related Person of such Venturer), or (ii) a Change of Control of a Venturer or the Parent of a Venturer, shall be deemed to be a Disposition of an Interest.

(b)   In addition, a violation by a Venturer or a Related Person of a Venturer of the restrictions of (i) Section 14 of the TPC Holding Joint Venture Agreement, (ii) Sections 7.07(a), 8.04, 8.05, 8A.01 and/or 8A.02 of the Stock Option Agreement and/or (iii) Section 6 of the Stockholders' Agreement, which is not cured within thirty (30) days after notice of such violation from the other Venturer, shall be deemed to be a violation by the Venturer of the restrictions of Section 14B.

C.   Procedure for Joint Sale of Business.

(1)   (a)   After three (3) years from the date of this Agreement, a Venturer may, no more than once every twenty-four (24) months (from the date that a Selling Notice was last given by that Venturer), give the other Venturer a Selling Notice.

(b)   The Receiving Venturer shall have the option to purchase not less than all of the Sellers' Combined Ownership Interest at the cash price and upon the terms and conditions set forth in the Selling Notice.   The option shall be exercised by giving notice to the Selling Venturer, within ninety (90) days after the Selling Notice is given.

42

(c)  If the option is exercised, the closing of the purchase shall be not more than sixty (60) days from the date notice of exercise of the option is given.

(2)  (a)  If the Receiving Venturer does not elect to purchase all of the Sellers' Combined Ownership Interest within ninety (90) days after the Selling Notice is given, then the Venturers shall thereafter cooperate in selling the Venture's business (by sale of assets or by sale of the Combined Ownership Interests of the Venturers and their Related Persons), for cash, to anyone other than the Sellers (or any of them) or a Related Person of the Sellers (or any of them), upon substantially the same terms as those contained in the Selling Notice.

(b)  If the Venturers are unable to agree upon the method of sale of the Venture's business (i.e., whether the sale will be by sale of assets or by sale of the Combined Ownership Interests of the Venturers and their Related Persons) within fifteen (15) days after the expiration of the ninety (90) day period described in Section 14C(2)(a), then the Venture shall engage an investment banker to assist in the sale, which investment banker shall determine whether a sale of assets or a sale of the Combined Ownership Interests of the Venturers and their Related Persons is preferable.

(i)  If the sale is a sale of assets, the sales price shall be not less than that sufficient for the Sellers to realize, after the payment of all liabilities of the Venture, all Venture Subsidiaries and TPI Holdings, as their distributive share of the net proceeds therefrom, the amount the Sellers would have been entitled to receive had the Sellers' Combined Ownership Interest been sold on the basis of the offer described in the Selling Notice.

(ii)  If the sale is a sale of the Combined Ownership Interests of the Venturers and their Related Persons, the sales price shall be not less than that sufficient for the Sellers to realize, after the Receiving Venturer and its Related Persons receive their share of the sales proceeds, the amount the Sellers would have been entitled to receive had the Combined Ownership Interests been sold on the basis of the offer described in the Selling Notice.

43

(3)   (a)   The Selling Venturer may, during the period that the Venture is attempting to sell the Venture's business, reduce the price for the Sellers' Combined Ownership Interest and/or alter the terms and conditions of the proposed sale, by giving a revised Selling Notice to the Receiving Venturer, which revised Selling Notice shall state the reduced price for the Sellers' Combined Ownership Interest and/or the revised terms and conditions of the proposed sale.

(b)   The Receiving Venturer shall again have the option, exercisable by giving written notice to the Selling Venturer within thirty (30) days after the revised Selling Notice is given, to purchase not less than all of the Sellers' Combined Ownership Interest, at the price and upon the terms and conditions set forth in the revised Selling Notice.

(c)   If the Receiving Venturer does not elect to purchase all of the Sellers' Combined Ownership Interest within such thirty (30) day period, the Venturers shall continue to attempt to sell the Venture's business, for cash, to anyone other than the Sellers (or any of them) or a Related Person of the Sellers (or any of them), upon substantially the same terms as those contained in the revised Selling Notice.   The method of sale and the sales price shall be determined in the manner described in Section 14C(2)(b) but by reference to the offer described in the most recent Selling Notice.

(4)   If a purchaser has not been obtained and a contract of sale executed by all necessary parties within nine (9) months after the expiration of the initial option to purchase granted under Section 14C(1) (regardless of whether a revised Selling Notice is given pursuant to Section 14C(3)), either Venturer may elect to terminate the sales effort by written notice to the other Venturer, in which event the sales effort shall be terminated until a Selling Notice is thereafter given in accordance with Section 14C(1)(a).

D.   Withdrawal Without Consent.

(1)   If either Venturer shall retire or withdraw from, or dissolve, the Venture without the requisite consent, it and/or its Related Persons shall be deemed to have withdrawn from the Venture and from each Venture Subsidiary, and such Venturer shall be deemed a Venturer who has dissolved wrongfully for purposes of Act Section 50-38 or any successor thereto.   The other Venturer shall have the option to continue the business of

44

the Venture without any obligation to liquidate the Venture's assets, in which event it shall purchase the Combined Ownership Interest of the dissolving Venturer and its Related Persons, at the price described in Act Section 50-38(2)(c)(II), as in effect on the date of this Agreement with respect to the Interest and each Venture Subsidiary Ownership Interest. The price described in Section 50-38(2)(c)(II) shall be deemed to include the value of the Stock Ownership Interest of the dissolving Venturer and its Related Persons. Such option must be exercised within sixty (60) days from the date of the retirement or withdrawal from, or dissolution of, the Venture. If the option to continue the business of the Venture is not exercised, the Venture shall be wound up pursuant to Section 16B. Notwithstanding the continuation of the business of the Venture, the dissolving Venturer shall not be entitled to any payment under Act Section 50-42 or any successor thereto. The Venturer who is not the retiring, withdrawing or dissolving Venturer shall, whether or not it elects to continue the business of the Venture, be entitled to damages from the wrongfully dissolving Venturer for breach of this Agreement.

E.   **Withdrawal With Consent**.

If a Venturer shall retire or withdraw from, or dissolve, the Venture with the requisite consent, the remaining Venturer may continue the business of the Venture without winding up the Venture business. Notwithstanding the continuation of the Venture's business, a retiring, withdrawing or dissolving Venturer shall not be entitled to any payment under Act Section 50-42 or any successor thereto.

F.   **Remedy for Breach**.

In addition to any other remedy under this Agreement or at law or in equity, if either Venturer violates or is deemed to have violated the restrictions of Section 14A or 14B, and such violation is not cured within thirty (30) days after notice of such violation from the other Venturer, the non-violating Venturer shall have the right to designate an additional Director and thereafter the Board shall consist of seven (7) Directors (subject to adjustment pursuant to Section 5D(3)). The Venturer designating the additional Director shall give notice to the other Venturer setting forth the Director's name, his business and residence addresses and his business telephone number.

G.   <u>Substitution of Assignee as a Venturer</u>.

(1)   An assignee may become an additional or substituted Venturer in place of its assignor only if all of the following conditions are satisfied:

(a)   The requirements of Section 14 have been fulfilled.

(b)   The instrument of assignment sets forth the intention of the assignor that the assignee shall succeed to the assignor's Interest as a substituted Venturer in its place.

(c)   The assignor and assignee shall have executed such other instruments as the Board may reasonably require, including written acceptance by the assignee of this Agreement and any ancillary agreements to which the Venturers are parties.

(d)   The assignee shall have paid all reasonable fees and costs incurred by the Venture in connection with its substitution as a Venturer as determined by the Board.

(2)   Unless named in this Agreement, or unless admitted to the Venture as provided in Section 14G, 15B(1)(c) or 17, no Person shall be considered a Venturer; and the Venture, each Venturer, and any other Person having business with the Venture need deal only with Venturers so named and so admitted. Neither the Venture, either Venturer or any other Person having business with the Venture shall be required to deal with any other Person by reason of any Disposition by a Venturer or by reason of the dissolution of a Venturer, except as otherwise provided in this Agreement.   In the absence of substitution of a Venturer for an assigning or dissolved Venturer, any payment to a Venturer, or to its successors, shall release the Venture of all liability to any other Person who may be interested in such payment by reason of an assignment by the Venturer or by reason of its dissolution.

46

15. <u>CONTINUATION OF THE VENTURE BUSINESS IN CERTAIN EVENTS</u>.

    A.   <u>Dissolution of a Venturer</u>.

       (1)  The dissolution of a corporate Venturer that is not cured within thirty (30) days of demand by the other Venturer shall be deemed to be a withdrawal by such Venturer without the requisite consent, as provided in Section 14D.

       (2)  (i)  If a Venturer that is a partnership is dissolved and is not reconstituted within thirty (30) days of demand by the other Venturer, such dissolution shall be deemed to be a withdrawal by the dissolved Venturer without the requisite consent, as provided in Section 14D.

       (ii)  Notwithstanding Section 14E, if the dissolution of a Venturer that is dissolved and not reconstituted within thirty (30) days of demand by the other Venturer is caused by the Bankruptcy of a partner of a Venturer and the purchase option under Section 14D is exercised, the purchase price for the Combined Ownership Interest of the dissolved Venturer and its Related Persons shall be determined pursuant to Section 15B(2) rather than pursuant to Section 14D.

    B.   <u>Bankruptcy</u>.

       (1)  (a)  Upon the Bankruptcy of a Venturer, the other Venturer shall have the option either to (i) purchase not less than all of the Combined Ownership Interest of the Bankrupt Venturer and its Related Persons, at a price determined pursuant to Section 15B(2), (ii) dissolve the Venture, or (iii) continue the business of the Venture and allow the Successor in Interest to become a Venturer.  The option shall be exercised by giving notice to the Bankrupt Venturer and its Successor in Interest within ninety (90) days after the determination of value under Section 15B(2).

       (b)  If the option to purchase is exercised, closing shall be within thirty (30) days after the giving of notice of exercise or lifting of the automatic stay, whichever is later.  If the option to purchase is exercised, the business of the Venture shall be continued without winding up the Venture's affairs.

47

(c)  If the option to purchase is not exercised and the non-Bankrupt Venturer does not elect to dissolve the Venture, the business of the Venture shall continue without winding up the Venture's affairs, and the Successor in Interest shall become a Venturer with all the benefits and obligations of its predecessor in interest and shall be deemed to be a party to this Agreement.

(d)  In no event will the Successor in Interest be entitled to any payment under Act Section 50-42 or any successor thereto.

(2)  If the Venturer having the option to purchase and the Successor in Interest to the Bankrupt Venturer cannot agree upon the purchase price and the allocation of the purchase price among the Interest, the Stock Ownership Interest and the Venture Subsidiary Ownership Interest within thirty (30) days after the first event of Bankruptcy, then an investment banker selected within five (5) days thereafter by the Venturer having the option to purchase and the Successor in Interest shall determine the value of the Combined Ownership Interest of the Bankrupt Venturer and its Related Persons as of the date of the applicable event of Bankruptcy, as well as the allocation of the purchase price among the Interest, the Stock Ownership Interest and the Venture Subsidiary Ownership Interest.  If such parties are unable to agree upon an investment banker within such five (5) day period, then one investment banker shall be selected by each party within five (5) days thereafter and such investment bankers shall jointly appoint within five (5) days of their selection a nationally recognized investment banker.  The Deciding Investment Banker shall determine the value of the Combined Ownership Interest of the Bankrupt Venturer and its Related Persons as of the date of the Bankruptcy within twenty (20) days from the date the Deciding Investment Banker is selected, and such determination shall be conclusive and binding

48

on all parties.  For purposes of determining the value of the Combined Ownership Interest, the party making such determination shall be given access to and may review all books and records and information available to the Venture.  The value determined in accordance with this Section 15B(2) shall be the purchase price, which shall be paid to the Persons entitled thereto in accordance with the allocation described above.  If the Deciding Investment Banker is able to provide only a range in which the value of the Combined Ownership Interest would exist, the value of such Combined Ownership Interest shall be the average value of the highest and lowest values of such range.

(3)  If the option to purchase is exercised, the expenses of all such investment bankers shall be paid by the purchasing Venturer.  If the option to purchase is not exercised, the expenses of all such investment bankers shall be paid by the Venture.

(4)  The purchase price, if the option is exercised, shall be payable as follows:

(a)  20% of the purchase price shall be paid at closing in cash; and

(b)  The balance of the purchase price shall be paid by delivery of a non-recourse promissory note of the purchaser dated as of the closing date and bearing interest at the Prime Rate (but in no event at an interest rate higher than the maximum rate legally permitted) with such principal amount being payable in five (5) equal annual installments, the first being due one year from closing, and with accrued interest being payable at the time of payment of principal.  If not sooner paid, such note and accrued interest thereon shall be payable in full upon sale of all or substantially all of the assets of the Venture.  The maker of the note shall have the right to prepay such note at any time and from time to time without penalty.  The Successor in Interest shall have a continuing lien on the Combined Ownership Interest being acquired by the purchaser to secure the amount of such promissory note and the interest due thereon, which lien may be foreclosed and enforced under applicable law.  The purchaser will execute and deliver such instruments as may be necessary or appropriate to create such lien.

16.  TERMINATION.

A.  Events Causing Dissolution.

The Venture shall be dissolved upon the first to occur of one of the following events:

(1)   The election by the Board to dissolve the Venture.

(2)   An election to dissolve under Section 15B(1)(a).

(3)   The sale or other disposition of all or substantially all of the Venture's assets; or

(4)   The expiration of the term specified in Section 1B.

B.   <u>Winding Up Venture Affairs</u>.

Upon the occurrence of the event specified in Section 16A, the CEO shall wind up the affairs of the Venture and all Venture Subsidiaries in accordance with the plan of liquidation adopted by the Board. If the Board cannot agree on a plan of liquidation, the Venture will retain an investment banker to wind up the affairs of the Venture. However, in the event of an election to dissolve the Venture under Section 15B(1)(a), the non-Bankrupt Venturer shall have the right to adopt the plan of liquidation and direct the CEO in winding up the affairs of the Venture. The affairs of TPI Holdings shall be wound up simultaneously with the winding up of the affairs of the Venture and all Venture Subsidiaries. After the payment of, or provision for, all debts of the Venture, the proceeds of the sale of the Venture assets and/or the Venture assets, shall be distributed to the Venturers in accordance with their Capital Accounts.  If any assets are distributed in kind, they shall be distributed on the basis of the fair market value thereof as determined by appraisal, and shall be deemed to have been sold at fair market value for purposes of the allocations under Section 6.  Unless the Venturers otherwise agree, there shall be distributed to the Venturers, as tenants-in-common, undivided interests in the assets equal to the distributions to which they are entitled under Section 7.

17.   <u>ADMISSION OF ADDITIONAL VENTURERS</u>.

Except as provided in Section 14G or 15B(1)(c), admission of a new Venturer shall require the mutual consent of the Venturers, which consent may be withheld in the sole discretion of either Venturer.  Upon admission, the business of the Venture shall be continued without winding up.

18. **AMENDMENTS**.

Amendments to this Agreement shall require the written consent of both Venturers. However, if a Venturer does not execute, within sixty (60) days after receipt thereof, an amendment which is, in the opinion of counsel for the Venture, necessary to satisfy requirements of the Code or Act with respect to partnerships or joint ventures or of any federal or state securities law or regulations and such amendment would not adversely affect the federal income tax treatment to be afforded a Venturer, adversely affect the liabilities of a Venturer, or change the method of allocation of Net Income or Net Loss, Gain or Loss from Sale, or the distribution (including, without limitation, the timing of distributions) of Net Proceeds from Sale or Financing or other funds available for distribution as provided in Section 7, then the Board shall make such amendment to this Agreement.

19. **NOTICES**.

A. **Form of Notice**.

All notices, requests and other communications required or permitted to be given by this Agreement shall be in writing (including telexes, telecopies, facsimile transmissions, and similar writings) and shall be given to the Venturer or other Person at its address or telecopier or facsimile number set forth on **Exhibit D** or such other address or telecopier facsimile number as such Venturer or other Person may hereafter specify for that purpose by notice to the Venturers.

B. **Effective Date of Notice**.

Each such notice, request or other communication shall be effective (1) if given by telecopier facsimile, when such telecommunication is transmitted and confirmation of receipt obtained, (2) if given by mail, five days after such communication is deposited in the mails with first class postage prepaid, addressed as aforesaid or (3) if given by any other means, when delivered at the address specified on **Exhibit D**.

20. **POWER OF ATTORNEY**.

A. **Appointment of Venturers as Attorney-in-Fact**.

Each Venturer irrevocably constitutes and appoints, with full power of substitution, the other Venturer, its true and lawful attorney-in-fact with full power and authority in its name, place and stead for the following purposes:

51

(1)   To execute, certify, acknowledge, deliver, swear to, file and record at the appropriate public offices, (a) any certificate identifying the Venturers, their addresses, the address of the Venture and/or the term of the Venture, (b) any certificate identifying the name or names under which the Venture conducts the Venture Business, and (c) any amendment of any certificate described in subparagraph (a) or (b), which may be necessary to qualify, or to continue the qualification of, the Venture to do business in any jurisdiction or which may otherwise be required in connection with the Venture's transaction of business in any jurisdiction.

(2)   To execute, deliver and file such instruments as may be necessary or appropriate to perfect the lien and security interest on the Combined Ownership Interest of the Defaulting Venturer and its Related Persons to secure the repayment of a loan made by a Lending Venturer, as described in Section 5D(2)(a).

B.     <u>Irrevocable Appointment</u>.

The appointment by each Venturer of the other Venturer as its attorney-in-fact is irrevocable and shall be deemed to be a power coupled with an interest and shall survive the Bankruptcy or dissolution of either Venturer giving such power and the transfer or assignment of all or any part of the Interest of such Venturer; provided, however, that in the event of the transfer by a Venturer of all or any part of its Interest, this power of attorney of a transferor Venturer shall survive such transfer only until such time, if any, as the transferee shall have been admitted to the Venture as a substituted Venturer and all required documents and instruments shall have been duly executed, filed and recorded to effect such substitution.

21.   <u>GOVERNING LAW</u>.

This Agreement and the rights and liabilities of the parties shall be determined in accordance with the laws of Virginia.

22.   <u>CAPTIONS</u>.

Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

23. **CONSTRUCTION**.

Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter gender, and the use of nouns and pronouns in the singular shall include the plural and vice versa. This Agreement shall not be construed more strictly against one party than the others by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that all of the parties have contributed substantially and materially to the preparation of this Agreement.

24. **SEVERABILITY**.

Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

25. **EXECUTION AND COUNTERPARTS**.

A. **General Execution Matters**.

This Agreement and any amendment hereof may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement. In addition, this Agreement and any amendment hereof may be executed through the use of counterpart signature pages. The signature of any party on any counterpart agreement or signature page shall be deemed to be a signature to, and may be appended to, any other counterpart.

B. **Additional Parties**.

(1) Landmark joins in the execution of this Agreement for the sole purpose of evidencing its agreement to the provisions of Section 11.

(2) Cox joins in the execution of this Agreement for the sole purpose of evidencing its agreement to the provisions of Section 11.

53

(3)   LTM Holdings joins in the execution of this Agreement for the sole purpose of evidencing its agreement to transfer its ownership interest in TPC Holding to the assignee of the entire Interest of LTM Company, simultaneously with LTM Company's assignment of its entire Interest, without additional consideration and for purposes of evidencing its agreement to the provisions of Section 5D.  Furthermore, LTM Holdings agrees to transfer its ownership interest in TPC Holding to the purchaser of all or substantially all of the assets of the Venture, in connection with a sale of all or substantially all of the assets of the Venture, simultaneously with the sale of such assets, without additional consideration.  LTM Holdings agrees to execute Selling Notices, purchase agreements, assignments and any and all other documents and to take any and all other steps necessary to accomplish the foregoing.  LTM Holdings further agrees to execute and deliver any documents necessary or appropriate to perfect the lien and security interest on the Combined Ownership Interest of a Defaulting Partner that is a Related Person of LTM Holdings to secure the repayment of a loan made by a Lending Venturer, as described in Section 5D(2)(a).

(4)   Cox Texas joins in the execution of this Agreement for the sole purpose of evidencing its agreement to transfer its Stock Ownership Interest to the assignee of the entire Interest of TPI, simultaneously with the assignment by TPI of its entire Interest, without additional consideration and for purposes of evidencing its agreement to the provisions of Section 5D.  Furthermore, Cox Texas agrees to transfer its Stock Ownership Interest to the purchaser of all or substantially all of the assets of the Venture, in connection with the sale of all or substantially all of the assets of the Venture, simultaneously with the sale of such assets, without additional consideration, Cox Texas agrees to execute Selling Notices, purchase agreements, assignments and any and all other documents and to take any and all other steps necessary to accomplish the foregoing. Cox Texas further agrees to execute and deliver any documents necessary or appropriate to perfect the lien and security interest on the Combined Ownership Interest of a Defaulting Partner that is a Related Person of Cox Texas to secure the repayment of a loan made by a Lending Venturer, as described in Section 5D(2)(a)

(5)   Nothing contained herein shall be construed to mean that any signatory hereto, other than the Venturers, are joint venturers or partners with any other party hereto or with the Venture.

C.   Additional Agreements.

(1)  TPI hereby evidences its agreement to transfer its ownership interest in TPC Holding to the assignee of its entire Interest, simultaneously with TPI's assignment of its entire Interest, without additional consideration.  Furthermore, TPI agrees to transfer its ownership interest in TPC Holding to the purchaser of all or substantially all of the assets of the Venture, in connection with a sale of all or substantially all of the assets of the Venture, simultaneously with the sale of such assets, without additional consideration.  TPI agrees to execute Selling Notices, purchase agreements, assignments and any and all other documents and to take any and all other steps necessary to accomplish the foregoing.

(2)  LTM Company hereby evidences its agreement to transfer its Stock Ownership Interest to the assignee of its entire Interest, simultaneously with LTM Company's assignment of its entire Interest, without additional consideration. Furthermore, LTM Company agrees to transfer its Stock Ownership Interest to the purchaser of all or substantially all of the assets of the Venture, in connection with the sale of all or substantially all of the assets of the Venture, simultaneously with the sale of such assets, without additional consideration. LTM Company agrees to execute Selling Notices, purchase agreements, assignments and any other documents and to take any and all other steps necessary to accomplish the foregoing.

26.   SUCCESSORS.

Subject to the limits on transferability contained herein, each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the successors and assigns of the respective parties hereto.

27.   ENTIRE AGREEMENT.

This Agreement, together with the exhibits hereto and together with the Contribution Agreement and the exhibits thereto (including, without limitation, the Tax Indemnity Agreement), constitutes the entire agreement between the Venturers and supersedes and cancels any prior agreements, representations, warranties or communications, whether oral or written, between the Venturers relating to the transactions contemplated hereby or the subject matter hereof.  If there is any conflict between any provision of this Agreement and any provision of the Contribution Agreement, the provisions of this Agreement shall control.  If there is any conflict between any provision of this Agreement and any provision of the Tax Indemnity Agreement, the provisions of the Tax Indemnity Agreement shall control.

55

IN WITNESS WHEREOF, the undersigned have each caused this Agreement to be executed as of the day and year first above written.

VENTURERS:

LTM COMPANY, a Virginia general partnership

By:   LANDMARK TARGET MEDIA
      PROPERTIES, INC., a Virginia
      corporation, General Partner

By _____
      Title:   Vice President

By:   LTM HOLDINGS, INC., a
      Virginia corporation,
      General Partner

By _____
      Title:   Vice President

TPI, Inc., a Delaware corporation

By _____
      Title:   Vice President

56

PARENTS:

COX ENTERPRISES, INC.,
a Delaware corporation

By: _____
Title: SECRETARY

LANDMARK COMMUNICATIONS, INC.,
a Virginia corporation

By: _____
Title: Vice Chairman

ADDITIONAL PARTIES:

LTM HOLDINGS, INC., a
Virginia corporation

By: _____
Title: Vice President

COX TEXAS PUBLICATIONS, INC.,
a Delaware corporation

By: _____
Title: Vice President

## Exhibit A

### Names and Interests of Venturers

| Names | Interests |
|-------|-----------|
| LTM Company | 50% |
| TPI, Inc. | 50% |

**Exhibit B**

**NONE**

**EXHIBIT C**
**(Page 1)**

**INITIAL CAPITAL CONTRIBUTION OF NONCURRENT ASSETS AND CASH TO TRADER PUBLISHING COMPANY ***

3/31/91

| | LTM COMPANY *** | TPI *** | CONTRIBUTE TO TRADER PUBLISHING COMPANY |
|---|---|---|---|
| CASH CONTRIBUTION TO TRADER PUBLISHING COMPANY | 30,059,485 | 0 | 30,059,485 |
| NONCURRENT ASSETS | | | |
| INVESTMENT - PARTNERSHIP INTEREST (IRPH) **** | 3,996,217 | | 3,996,217 |
| PROPERTY, PLANT AND EQUIPMENT | 8,968,588 | 11,951,204 | 20,919,792 |
| INTANGIBLE ASSETS | | | |
| GOODWILL | 13,345,890 | 33,042,855 | 46,388,745 |
| NONCOMPETITION & CONSULTING AGREEMENTS | 24,556,248 | 24,397,917 | 48,954,165 |
| FRANCHISES | 0 | 17,363,160 | 17,363,160 |
| OTHER INTANGIBLE ASSETS | 5,881,651 | 420,443 | 6,302,094 |
| RIGHT TO DAYTON BUILDING | 367,500 | 0 | 367,500 |
| TOTAL NONCURRENT AND CASH CONTRIBUTION | 87,175,579 | 87,175,579 | 174,351,158 |

** The Venturers have mutually agreed that the above numbers represent fair market value.

*** Data based on December 30, 1990 values for LTM Company and December 31,1990 values for TPI with the exception of intangible assets expressed at March 31, 1991 values.

**** Data consists of intangible assets as of March 31, 1991 and property, plant and equipment as of December 30, 1990.

**EXHIBIT C**
**(Page 2)**

**LANDMARK TARGET MEDIA**
**CASH CONTRIBUTION ADJUSTMENT**

**I. Cash Adjustment at Closing Based on 3/31/91 Balances**

| | 3/31/91 |
|---|---|
| Cash contribution from LCI to Joint Venture | 30,700,000 |
| PV of future tax benefits on noncompete/consulting | |
| LTM – Noncompete/Consulting | (8,733,548) |
| COX – Noncompete/Consulting | 7,277,430 |
| PV of future tax benefits on other intangibles | |
| LTM – Intangible | (1,965,139) |
| COX – Franchise | 2,800,742 |
| **Adjusted Cash** | **30,059,485** |

Exhibit D

## Form of Business Opportunity Notice

TO THE PRESIDENT AND CHIEF EXECUTIVE OFFICER OF TRADER PUBLISHING COMPANY:

I. In accordance with Section 11B of the Joint Venture Agreement of Trader Publishing Company dated as of March 31, 1991 (the "Company Joint Venture Agreement"), this Business Opportunity Notice is given this _____ day of _____, ___.

II. _____
            (Indicate the name of Venturer, Parent or Related Person)

(the "Offeror") desires to engage in a Protected Business (as that term is defined in the Company Joint Venture Agreement) in an MSA or CMSA in which the Venture or a Venture Subsidiary (as that term is defined in the Company Joint Venture Agreement) does not, at the time this Business Opportunity Notice is given, conduct, and has not within three (3) years prior thereto conducted, the Protected Business, and hereby offers such opportunity (the "Business Opportunity") to the Venture.

III. If the Venture does not elect to participate in the Business Opportunity, the Offeror intends to pursue the Business Opportunity (select one) (x) independently or (y) with

_____
(State names of other parties to be involved in pursuit of the Business Opportunity)

IV. The Business Opportunity involves (select one) (x) the acquisition of an existing business; or (y) the start-up of a new business.

[To be completed if the Business Opportunity involves the acquisition of an existing business]

The following information regarding the Business Opportunity is provided:

1.   State the name and principal place of business of the business.

2.   Indicate the name and title of the individual with negotiating authority for the business.

3.   a.   Describe the business to be acquired.

b.   Describe the "Protected Business" component of the business.  Indicate the percentage and dollar amount of revenues of the business derived from Protected Business activities.

c.   If applicable, describe activities of the existing business other than the Protected Business.

4.   State the markets in which the business is conducted.

5.   Describe the structure of the acquisition of the business (acquisition of assets, merger, joint venture, cash tender offer).

a.   If assets are to be acquired, describe the assets and indicate their approximate value.

b.   If voting securities are to be acquired, list the classes of voting securities which will be outstanding following

the acquisition, the number of shares to be acquired in the acquisition and the dollar value of the securities.

6.   Indicate the consideration to be paid.

7.   Describe the source of funds for the proposed purchase price.

8.   Indicate the expected dates/deadlines of major events required to consummate the acquisition.

9.   Summarize the discussions and contacts to date between the Offeror and the seller.

10.   Attach all financial information, studies, analyses and reports which have been received by Offeror for purposes of evaluating the Business Opportunity.

11.   Indicate the source of information regarding the Business Opportunity.

12.   If the Offeror intends to pursue the Business Opportunity with another entity, describe the nature of that entity's participation.

13.   Include such additional available information relevant to Offeree's determination of whether it desires for Trader Publishing Company to pursue the Business Opportunity.

[To be completed if the Business Opportunity involves the start-up of a new business]

The following information regarding the Business Opportunity is provided:

1.   Provide a general description of the new business, including the entity to be employed and assets to be acquired.

2.    Indicate the markets in which the business will be conducted.

3.    Indicate the amount of capital required for the Business Opportunity and the source of funds therefor.

4.    Attach all financial information, studies, analyses and reports which have been prepared for purposes of evaluating the Business Opportunity.

5.    Indicate the source of information regarding the Business Opportunity.

6.    If the Offeror intends to pursue the Business Opportunity with another entity, describe the nature of that entity's participation.

7.    Include such additional available information relevant to Offeree's determination of whether it desires for Trader Publishing Company to pursue the Business Opportunity.

_____
(Signature)

cc:  Each Member of the Executive Committee

Exhibit E

Addresses for Notice Purposes

If to LTM Company:

        Mr. Richard F. Barry, III
        Vice Chairman
        Landmark Communications, Inc.
        150 W. Brambleton Avenue
        Norfolk, Virginia  23510

        With a Copy to:

        Becky A. Powhatan
        Corporate Counsel
        Landmark Communications, Inc.
        150 West Brambleton Avenue
        Norfolk, Virginia  23510

If to TPI, Inc.:

        Mr. David E. Easterly
        President
        Cox Newspapers
        1400 Lake Hearn Drive, N.E.
        Atlanta, Georgia  30319

        With a Copy to:

        Mr. James A. Hatcher
        Secretary and General Counsel
        Cox Enterprises, Inc.
        1400 Lake Hearn Drive, N.E.
        Atlanta, Georgia  30319

FOURTH AMENDMENT AND RESTATEMENT OF

PARTNERSHIP AGREEMENT

OF

LTM COMPANY, L.P.

68120.1/JJW:PH
8/11/93

**Exhibit C to**
**Friddell Affidavit**

# TABLE OF CONTENTS

Page

1. TERM . . . . . . . . . . . . . . . . . . . . . . . 2

2. DEFINITIONS . . . . . . . . . . . . . . . . . . . 2

3. NAME AND PLACE OF BUSINESS . . . . . . . . . . . . 5
   A. Name . . . . . . . . . . . . . . . . . . . . . 5
   B. Place of Business . . . . . . . . . . . . . . 5
   C. Partnership's Agent for Service of Process . . . . 5

4. BUSINESS OF PARTNERSHIP . . . . . . . . . . . . . 5

5. PARTNERS, INTERESTS AND CAPITAL CONTRIBUTIONS . . . . . 5
   A. Partners and Interests . . . . . . . . . . . . 5
   B. Initial Capital Contributions . . . . . . . . 5
   C. Additional Capital . . . . . . . . . . . . . . 6
   D. Additional General Provisions on Capital and
      Obligations of Partners . . . . . . . . . . . 6

6. ALLOCATIONS . . . . . . . . . . . . . . . . . . . 7
   A. Net Income and Net Loss, Credits and Gain or Loss
      from Sale . . . . . . . . . . . . . . . . . . 7
   B. Partner Nonrecourse Deductions . . . . . . . . 8
   C. [RESERVED] . . . . . . . . . . . . . . . . . . 9
   D. [RESERVED] . . . . . . . . . . . . . . . . . . 9
   E. Partner Nonrecourse Deduction Chargeback . . . . 9
   F. Allocations to Reflect Book Value/Tax Disparity . . 9

7. DISTRIBUTIONS . . . . . . . . . . . . . . . . . . 9

8. MANAGEMENT . . . . . . . . . . . . . . . . . . . . 10
   A. Rights and Powers of the General Partner . . . . 10
   B. Execution of Documents . . . . . . . . . . . . 10
   C. Limitations on the General Partner . . . . . . 10
   D. Rights and Powers of the Limited Partners . . . 10
   E. Tax Matters Partner . . . . . . . . . . . . . 11

9. ACCOUNTS AND BOOKS . . . . . . . . . . . . . . . . 11
   A. Bank Accounts . . . . . . . . . . . . . . . . 11
   B. Maintenance of Books . . . . . . . . . . . . . 11

10. EXCULPATION AND INDEMNIFICATION OF PARTNERS . . . . . 11
    A. Exculpation . . . . . . . . . . . . . . . . . 11
    B. Indemnification . . . . . . . . . . . . . . . 11

11.  TERMINATION  . . . . . . . . . . . . . . . . . . . .  12
     A.   Events Causing Dissolution  . . . . . . . . . .  12
     B.   Election to Continue Partnership  . . . . . . .  12
     C.   Winding Up Partnership Affairs  . . . . . . . .  13

12.  ADMISSION OF ADDITIONAL PARTNERS  . . . . . . . . . .  14

13.  AMENDMENTS  . . . . . . . . . . . . . . . . . . . . .  14

14.  NOTICES  . . . . . . . . . . . . . . . . . . . . . .  14
     A.   Form of Notice  . . . . . . . . . . . . . . . .  14
     B.   Effective Date of Notice  . . . . . . . . . . .  15

15.  POWER OF ATTORNEY  . . . . . . . . . . . . . . . . .  15
     A.   Appointment of General Partner as Attorney-in-
          Fact  . . . . . . . . . . . . . . . . . . . . .  15
     B.   Irrevocable Appointment  . . . . . . . . . . . .  15

16.  GOVERNING LAW  . . . . . . . . . . . . . . . . . . .  16

17.  CAPTIONS  . . . . . . . . . . . . . . . . . . . . . .  16

18.  CONSTRUCTION  . . . . . . . . . . . . . . . . . . . .  16

19.  SEVERABILITY  . . . . . . . . . . . . . . . . . . . .  16

20.  EXECUTION AND COUNTERPARTS  . . . . . . . . . . . . .  16

21.  SUCCESSORS  . . . . . . . . . . . . . . . . . . . . .  16

Exhibit A

          Addresses for Notice Purposes  . . . . . . .  18

FOURTH AMENDMENT AND RESTATEMENT OF
PARTNERSHIP AGREEMENT
OF
LTM COMPANY, L.P.

THIS FOURTH AMENDMENT AND RESTATEMENT OF PARTNERSHIP
AGREEMENT OF LTM COMPANY, L.P. is dated as of the 28th day of
December, 1992, by and among LTM HOLDINGS, INC., a Virginia
corporation ("LTM Holdings"); and LTM INVESTMENTS, INC., a Nevada
corporation ("LTM Investments").

W I T N E S S E T H:

WHEREAS, pursuant to the Partnership Agreement of LTM
Company dated March 31, 1991 (the "Original Agreement"), Landmark
Target Media Properties, Inc. ("Properties") and LTM Holdings
associated to form a general partnership pursuant to the Uniform
Partnership Act of Virginia upon the terms and conditions
contained in the Original Agreement;

WHEREAS, effective December 23, 1991, Properties assigned to
LTM Holdings a 4.2% interest in the Partnership and assigned to
LTM Investments a 44.8% interest in the Partnership;

WHEREAS, by First Amendment to Partnership Agreement of LTM
Company dated December 23, 1991, the Original Agreement was
amended to reflect the aforedescribed assignments and to reflect
the admission of LTM Investments as a partner in the Partnership;

WHEREAS, by Second Amendment to Partnership Agreement of LTM
Company dated December 23, 1991, the Original Agreement was
amended further to revise the allocation provisions of the
Original Agreement in order to reduce the number of state income
tax returns and estimated tax payments required to be filed and
made by the Partners in the states from which the Partnership
derives income;

WHEREAS, effective December 22, 1992, the Partners caused
the Partnership to be converted from general partnership form to
limited partnership form in accordance with Section 50-73.11:1 of
the Code of Virginia, 1950, as amended;

WHEREAS, effective December 27, 1992, Properties assigned to
LTM Holdings a 2.0% interest in the Partnership, assigned to LTM
Investments a 45.2% interest in the Partnership and withdrew from
the Partnership; and

WHEREAS, the Partners now wish to make further changes to the Partnership Agreement to reflect accurately their economic interests in the Partnership.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties agree as follows:

1. TERM.

The term of the Partnership began on March 1, 1991 and shall continue until December 31, 2041, unless earlier terminated in accordance with this Agreement.

2. DEFINITIONS.

The following terms used in this Agreement shall (unless otherwise expressly provided herein or unless the context otherwise requires) have the following respective meanings:

Act.

The Revised Uniform Limited Partnership Act of Virginia, as it may be amended or superseded from time to time.

Agreement.

This Fourth Amendment and Restatement of Partnership Agreement, as originally executed and as further amended from time to time, as the context requires.

Capital Account.

As of any date, with respect to any Partner, the capital account maintained for each Partner as determined under Section 5D.

Capital Contribution.

The total amount of money and the agreed upon fair market value of any property contributed to the Partnership by a Partner or its predecessor in interest on the date of contribution.

Code.

The Internal Revenue Code of 1986, as amended from time to time.

<u>Company</u>.

Trader Publishing Company, a Virginia general partnership formed by the Partnership and TPI.

<u>Company ·Joint Venture Agreement</u>.

The Joint Venture Agreement of the Company, dated as of March 31, 1991.

<u>Contribution Agreement</u>.

The Contribution Agreement entered into among TPI, Cox Texas Enterprises, Inc., TPI Holdings, Inc., and Cox Enterprises, Inc.; LTM Holdings, the Partnership, Properties, and Landmark Communications, Inc.; the Company; and TPC Holding.

<u>Gain or Loss from Sale</u>.

Any gain or loss for federal income tax purposes resulting from the sale or other disposition of any or all of the Partnership's assets not in the ordinary course of business, except that for purposes of Capital Account adjustments, such gain or loss shall be computed by reference to the value on the books of the Partnership as of the date of sale or other disposition rather than by reference to the adjusted tax basis of such property as of that date.

<u>General Partner</u>.

LTM Holdings, and any person or entity appointed as a successor General Partner under this Agreement.

<u>Interest</u>.

The ownership interest of a Partner in the Partnership at any particular time, including the right of the Partner to any and all benefits to which the Partner is entitled and the obligations to which the Partner is subject under this Agreement.

<u>Limited Partner</u>.

Properties, LTM Investments, and any person or entity that becomes an additional or substituted Limited Partner under this Agreement.

<u>LTM Holdings</u>.

LTM Holdings, Inc., a Virginia corporation.

LTM Investments.

LTM Investments, Inc., a Nevada corporation.

Net Income or Net Loss.

The income or loss, as the case may be, of the Partnership for a period as determined in accordance with Section 703(a) of the Code, including each item of income, gain, loss or deduction required to be separately stated, but excluding Gain or Loss from Sale.

Original Agreement.

The Partnership Agreement of LTM Company dated March 31, 1991.

Partner.

Partners of all classes.

Partnership.

The partnership existing under this Agreement and the Original Agreement.

Partnership Interest.

A 99 percent ownership interest in TPC Holding.

Properties.

Landmark Target Media Properties, Inc., a Virginia corporation.

Regulations.

Regulations issued under the Code by the Department of the Treasury, as amended from time to time.

TPC Holding.

Trader Publishing Holding Company, a Virginia general partnership.

TPI.

TPI, Inc., a Delaware corporation.

3.   NAME AND PLACE OF BUSINESS.

    A.   Name.

The name of the Partnership is LTM Company, L.P. The business of the Partnership may be conducted under such trade or fictitious names as the General Partner may determine.

    B.   Place of Business.

The principal place of business of the Partnership shall be 150 West Brambleton Avenue, Norfolk, Virginia 23510, or such other place as the General Partner may determine. The principal place of business of the Partnership shall also be the registered office of the Partnership. The General Partner shall give notice to the other Partners of any change in the registered office.

    C.   Partnership's Agent for Service of Process.

The Partnership's Agent for Service of Process shall be Louis F. Ryan, 150 West Brambleton Avenue, Norfolk, Virginia 23510, or such other person as the General Partner may designate.

4.   BUSINESS OF PARTNERSHIP.

The business of the Partnership shall consist of (a) being a general partner in the Company and (b) carrying on any and all activities related or incidental thereto.

5.   PARTNERS, INTERESTS AND CAPITAL CONTRIBUTIONS.

    A.   Partners and Interests.

The names and Interests of the Partners as of the date hereof are as follows:

| General Partner | Interest |
|---|---|
| LTM Holdings, Inc. | 10.0 |
| Limited Partner | |
| LTM Investments, Inc. | 90.0 |

    B.   Initial Capital Contributions.

Simultaneously with the execution of the Original Agreement, LTM Holdings contributed the Partnership Interest to the Partnership and Properties contributed to the Partnership its

assets described in Section 1.01 of the Contribution Agreement, together with the cash contribution described in Section 5B(2)(a) of the Company Joint Venture Agreement, for which the Partners have received Capital Account credit in the amount of the value of the assets contributed as determined by the Partners, subject to the adjustments described in Sections 5B(2), 5B(3), 5B(4) and 5B(5) of the Original Agreement.

     C.   Additional Capital.

     (1)  If the General Partner determines that additional capital is needed by the Partnership for Partnership expenses and obligations, the Partners shall contribute the additional required capital in proportion to their respective Interests.

     (2)  If the General Partner is required to pay more than the share of any Partnership debt that is equal to its percentage interest in the Partnership, then the General Partner shall be entitled to contribution from the Limited Partners for their proportionate share of such Partnership debt.

     D.   Additional General Provisions on Capital and Obligations of Partners.

     (1)  (a)  A Capital Account shall be established and maintained for each Partner. A Partner shall have a single Capital Account, regardless of the time or manner in which any portions of the Partner's Interest were acquired. If an Interest is transferred in accordance with this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Interest.

     (b)  As of any date, a Partner's Capital Account shall consist of (i) the sum of (A) its Capital Contributions and (B) allocations to it of Net Income and Gain from Sale (or items thereof) (other than gain under Section 6F) including income and gain exempt from tax, and (C) the amount of any Partnership liabilities assumed by that Partner or which are secured by any Partnership assets distributed to that Partner, minus (ii) the sum of (A) the amount of money distributed to it by the Partnership, (B) the fair market value of property distributed to it by the Partnership, (C) the amount of any liabilities of that Partner assumed by the Partnership or secured by any property contributed by that Partner to the Partnership, (D) allocations to it of expenditures of the Partnership described in Section 705(a)(2)(B) of the Code or treated as such expenditures under the Regulations, and (E) allocations to it of Net Loss and Loss from Sale (or items thereof).

(c)  The principles in this Agreement governing the adjustments of Capital Accounts are intended to satisfy the capital account maintenance requirements of Regulation Section 1.704-1(b)(2)(iv) and shall be construed consistently therewith.

(2)  No Partner gives up any of its rights to be repaid its Capital Contribution in favor of any other Partner.

(3)  No Partner shall be paid interest on its Capital Account.

(4)  No Partner shall have the right to demand and receive property other than cash in return of its Capital Contribution.

(5)  No Partner shall have the right to demand and receive the return of its Capital Contribution until the termination of the Partnership.

6.   ALLOCATIONS.

A.   Net Income and Net Loss, Credits and Gain or Loss from Sale.

(1)  Subject to Sections 6B, 6E and 6F, Net Income, Net Loss, assets, apportionment factors, tax credits and Gain or Loss from Sale shall be allocated among the Partners in accordance with Section 5A(2) on the basis of the state from which such income, gain, loss or credit was derived, in which such assets are located or to which such apportionment factors are attributable, in the following order:

| Sequence of Allocation | State from which Net Income, Net Loss, tax credits or Gain or Loss from Sale derived: |
| --- | --- |
| 1st | Virginia |
| 2nd | Illinois |
| 3rd | Ohio |
| 4th | North Carolina |
| 5th | Maryland |
| 6th | South Carolina |
| 7th | Georgia |
| 8th | Florida |
| 9th | Pennsylvania |
| 10th | Rhode Island |
| 11th | Alabama |
| 12th | Kentucky |
| 13th | Missouri |

| | |
|---|---|
| 14th | Oklahoma |
| 15th | Tennessee |
| 16th | Kansas |
| 17th | Michigan |
| 18th | Minnesota |
| 19th | New York |
| 20th | Arizona |
| 21st | Colorado |
| 22nd | Nevada |
| 23rd | New Mexico |
| 24th | Texas |
| 25th | Utah |
| 26th | Oregon |
| 27th | California |
| 28th | Washington |
| Last | Any other states in which the Partnership engages in business after the date hereof, in the order that the Partnership engages in business in those states |

(2)  With respect to periods commencing on or after December 28, 1992:

(a)  Net Income, Net Loss, assets, apportionment factors, tax credits and Gain or Loss from Sale shall first be allocated to LTM Holdings in the order described in Section 6A(1), until LTM Holdings has received an allocation of its proportionate share of all Net Income, Net Loss, assets, apportionment factors, tax credits and Gain or Loss from Sale.

(b)  Any Net Income, Net Loss, assets, apportionment factors, tax credits and Gain or Loss from Sale remaining after the allocations described in Section 6A(3)(a) shall be allocated to LTM Investments.

(3)  For purposes of determining the state from which Gain or Loss from Sale is derived, Gain or Loss from the sale of real or personal property will be deemed to have been derived from the state in which that asset was located at the time of its sale and Gain or Loss from the sale of intangible property will be deemed to have been derived from the state in which that asset was employed at the time of its sale.

B.   Partner Nonrecourse Deductions.

Any partner nonrecourse deductions (as defined in Regulation Section 1.704-1T(b)(4)(iv)(h)(3)) for any fiscal year shall be allocated to the Partner who bears the economic risk of

loss with respect to the partner nonrecourse debt (as defined in Regulation Section 1.704-1T(b)(4)(iv)(k)(4)) to which such partner nonrecourse deductions are attributable in accordance with Regulation Section 1.704-1T(b)(4)(iv)(h).

C.   [RESERVED].

D.   [RESERVED].

E.   <u>Partner Nonrecourse Deduction Chargeback</u>.

If there is a disposition in a Partnership fiscal year of any asset securing nonrecourse debt that gave rise to partner nonrecourse deductions allocated under Section 6B, there shall be specially allocated, to the Partners to whom the partner nonrecourse deductions attributable to that asset were previously allocated, items of Partnership income and gain for such year (and if necessary, subsequent years) in an amount equal to the partner nonrecourse deductions previously allocated.

F.   <u>Allocations to Reflect Book Value/Tax Disparity</u>.

In accordance with Section 704(c) of the Code and the Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take into account any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its agreed upon fair market value at the time of contribution, such that any unrealized gain or loss associated with such property is allocated to the Partner that contributed the property; and any additional gain or loss associated with such property is allocated among the Partners in accordance with their respective Interests.   In addition, if Partnership property is revalued and Capital Accounts are adjusted, then subsequent allocations of income, gain, loss and deduction for tax purposes with respect to the revalued property shall take into account the variation between the property's adjusted tax basis and book value in the same manner as under Section 704(c) of the Code and Regulations.

7.   <u>DISTRIBUTIONS</u>.

Funds available for distribution shall be distributed to the Partners (at such time as the General Partner shall determine) in proportion to their respective Interests.

8.   MANAGEMENT.

    A.   Rights and Powers of the General Partner.

        (1) Subject to the restrictions contained in Section 8C, the General Partner shall have the exclusive right to manage and conduct the Partnership affairs and to make all decisions regarding the Partnership's business.

        (2) Subject to the restrictions contained in Section 8C, the General Partner shall have all the rights and powers of a general partner in a partnership without limited partners as provided in the Act and as otherwise provided by law, and any action taken by the General Partner as herein provided shall constitute the act of, and bind, the Partnership.  Subject to Section 8C, the General Partner is granted the right, power and authority to do in the name of, and on behalf of, the Partnership all things that, in its sole judgment, are necessary, proper or desirable to carry out the purposes of the Partnership.

    B.   Execution of Documents.

        Any deed, deed of trust, bill of sale, lease agreement, security agreement, financing statement, contract of sale, or other contract or instrument purporting to convey or encumber any or all of the assets of the Partnership, at any time held in its name, may be signed by the General Partner.

    C.   Limitations on the General Partner.

        In addition to other acts prohibited or restricted by law, the General Partner is expressly prohibited, without the approval of a majority in interest of the Limited Partners, from the following:

        (1) acting in contravention of this Agreement;

        (2) engaging in an act that would make it impossible to carry on the ordinary business of the Partnership;

        (3) confessing a judgment against the Partnership; and

        (4) assigning the partnership interest of the Partnership in the Company.

    D.   Rights and Powers of the Limited Partners.

        The Limited Partners shall have no right to control or manage, nor shall take any part in the control and

68120.1/JJW:PH
8/11/93

10

management of, the Partnership business, but may exercise the rights and powers of a Limited Partner under this Agreement, including without limitation, the right to approve certain matters as provided in this Agreement.  The exercise of such rights and powers is deemed to be a matter affecting the basic structure of the Partnership and not the control of its business.

    E.    <u>Tax Matters Partner</u>.

The General Partner is designated as the "Tax Matters Partner" for purposes of the Code.

9.    <u>ACCOUNTS AND BOOKS</u>.

    A.    <u>Bank Accounts</u>.

All funds of the Partnership shall be deposited in accounts of the Partnership at such financial institutions as shall be designated by the General Partner.  All withdrawals shall be made upon the signature of such individual or individuals as may from time to time be designated by the General Partner.

    B.    <u>Maintenance of Books</u>.

The Partnership shall keep or cause to be kept complete and accurate books of account, in which shall be entered fully and accurately each and every transaction of the Partnership.  The Partnership's books shall be maintained at the principal place of business of the Partnership or at such other place as the General Partner may from time to time designate; and each Partner shall have access to the books at all reasonable times and the right to inspect and copy either directly or through a person designated by it.

10.    <u>EXCULPATION AND INDEMNIFICATION OF PARTNERS</u>.

    A.    <u>Exculpation</u>.

No Partner shall be liable to the Partnership or to any Partner for or as a result of any act, omission or error in judgment that was taken, omitted or made by it in the exercise of its judgment in good faith pursuant to the authorization granted to it under this Agreement that does not constitute gross negligence or willful misconduct.

    B.    <u>Indemnification</u>.

(1)  To the extent that a corporation is permitted to indemnify its directors under the Code of Virginia, the

68120.1/JJW:PH
8/11/93

11

Partnership shall indemnify and hold harmless the Partners, from and against all costs, loss, damage and expense, including reasonable attorney's fees, arising out of or resulting from any act performed by such Partner within the scope of the authority conferred upon it by this Agreement, except for acts of gross negligence or willful misconduct of such Partner, or for damages arising from any material misrepresentation by such Partner.

(2)   To the extent that a corporation is permitted to indemnify its directors under the Code of Virginia, each Partner shall indemnify and hold harmless the other Partners, from and against all costs, loss, damage and expense, including reasonable attorney's fees, arising out of or resulting from any act performed by such Partner within the scope of the authority conferred upon it by this Agreement, except for acts of gross negligence or willful misconduct of such Partner, or for damages arising from any material misrepresentation by such Partner.

11.   <u>TERMINATION</u>.

A.   <u>Events Causing Dissolution</u>.

The Partnership shall be dissolved upon the first to occur of one of the following events:

(1)   The unanimous agreement of the Partners.

(2)   Withdrawal or retirement of the General Partner, unless the business of the Partnership is continued pursuant to Section 11B.

(3)   The liquidation, dissolution or bankruptcy of the General Partner or the occurrence of any other event causing the dissolution of the Partnership under the laws of the Commonwealth of Virginia, unless the business of the Partnership is continued pursuant to Section 11B.

(4)   The sale or other disposition of all or substantially all of the Partnership's assets; or

(5)   The expiration of the term specified in Section 1B.

B.   <u>Election to Continue Partnership</u>.

Notwithstanding Section 11A, the events set forth in Sections 11A(2) or (3) shall not result in the dissolution, winding up or termination of the Partnership if, within ninety (90) days after the occurrence of one of those events, the Limited Partners elect to continue the Partnership business and

appoint a successor General Partner.  Upon the appointment of a successor General Partner, the Partnership shall continue as a limited partnership pursuant to the Act under this Agreement until the end of the term for which it is formed or until the occurrence of an event set forth in Section 11A, in which event the provisions of this Section 11B shall again be applicable.

    C.   <u>Winding Up Partnership Affairs</u>.

    (1)  Upon the occurrence of one of the events specified in Section 11A, if the business of the Partnership is not continued pursuant to Section 11B, then after the payment of, or provision for, all debts of the Partnership, and subject to the provisions of Section 11C(2), the proceeds of the sale of the Partnership assets and/or the Partnership assets, shall be distributed to the Partners in accordance with their Capital Accounts.  Such proceeds and/or assets shall first be distributed to LTM Holdings in the order described in Section 11C(2), until LTM Holdings has received distributions in accordance with its Capital Account, and the remaining proceeds and/or assets shall be distributed to LTM Investments.  If any assets are distributed in kind, they shall be distributed on the basis of the fair market value thereof as determined by appraisal, and shall be deemed to have been sold at fair market value for purposes of the allocations under Section 6.

    (2)  To the extent that proceeds of the sale of Partnership assets and/or Partnership assets are distributed to the Partners in accordance with Section 11C(1), the Partners shall receive such distributions on the basis of the state from which the proceeds of the sale of the Partnership's assets were derived, or in which the assets distributed in kind were located or employed on the date of the occurrence of the event specified in Section 11A, in the following order:

| Sequence of Distribution | State from which proceeds derived or in which assets located or employed |
|---|---|
| 1st | Virginia |
| 2nd | Illinois |
| 3rd | Ohio |
| 4th | North Carolina |
| 5th | Maryland |
| 6th | South Carolina |
| 7th | Georgia |
| 8th | Florida |
| 9th | Pennsylvania |
| 10th | Rhode Island |
| 11th | Alabama |
| 12th | Kentucky |

| | |
|---|---|
| 13th | Missouri |
| 14th | Oklahoma |
| 15th | Tennessee |
| 16th | Kansas |
| 17th | Michigan |
| 18th | Minnesota |
| 19th | New York |
| 20th | Arizona |
| 21st | Colorado |
| 22nd | Nevada |
| 23rd | New Mexico |
| 24th | Texas |
| 25th | Utah |
| 26th | Oregon |
| 27th | California |
| 28th | Washington |
| Last | Any other states in which the Partnership engages in business after the date hereof, in the order that the Partnership engages in business in those states |

(3)  For purposes of determining the state from which proceeds of the sale of Partnership assets is derived, proceeds from such sales will be deemed to have been derived from the state in which each such asset sold was located at the time of its sale and proceeds from the sale of intangible assets will be deemed to have been derived from the state in which each such asset was employed at the time of its sale.

12.  ADMISSION OF ADDITIONAL PARTNERS.

Admission of a new Partner shall require the  consent of the General Partner.  Upon admission, the business of the Partnership shall be continued without winding up.

13.  AMENDMENTS.

Amendments to this Agreement shall require the written consent of all Partners.

14.  NOTICES.

A.  Form of Notice.

All notices, requests and other communications required or permitted to be given by this Agreement shall be in writing (including telexes, telecopies, facsimile transmissions, and similar writings) and shall be given to the Partner at its address or telecopier or facsimile number set forth on Exhibit A

68120.1/JJW:PH
8/11/93

14

or such other address or telecopier facsimile number as such Partner may hereafter specify for that purpose by notice to the Partners.

    B.    <u>Effective Date of Notice</u>.

        Each such notice, request or other communication shall be effective (1) if given by telecopier facsimile, when such telecommunication is transmitted and confirmation of receipt obtained, (2) if given by mail, five days after such communication is deposited in the mails with first class postage prepaid, addressed as aforesaid or (3) if given by any other means, when delivered at the address specified on <u>Exhibit A</u>.

    15.    <u>POWER OF ATTORNEY</u>.

    A.    <u>Appointment of General Partner as Attorney-in-Fact</u>.

        Each Limited Partner irrevocably constitutes and appoints, with full power of substitution, the General Partner its true and lawful attorney-in-fact with full power and authority in its name, place and stead, to execute, certify, acknowledge, deliver, swear to, file and record at the appropriate public offices, (1) any certificate identifying the Partners, their addresses, the address of the Partnership and/or the term of the Partnership, (2) any certificate identifying the name or names under which the Partnership conducts the Partnership Business, and (3) any amendment of any certificate described in subparagraph (1) or (2), which may be necessary to qualify, or to continue the qualification of, the Partnership to do business in any jurisdiction or which may otherwise be required in connection with the Partnership's transaction of business in any jurisdiction.

    B.    <u>Irrevocable Appointment</u>.

        The appointment by each Limited Partner of the General Partner as its attorney-in-fact is irrevocable and shall be deemed to be a power coupled with an interest and shall survive the bankruptcy or dissolution of any Limited Partner giving such power and the transfer or assignment of all or any part of the Interest of such Limited Partner; provided, however, that in the event of the transfer by a Limited Partner of all of its Interest, this power of attorney of a transferor Limited Partner shall survive such transfer only until such time, if any, as the transferee shall have been admitted to the Partnership as a substituted Limited Partner and all required documents and instruments shall have been duly executed, filed and recorded to effect such substitution.

68120.1/JJW:PH
8/11/93

16.   GOVERNING LAW.

This Agreement and the rights and liabilities of the parties shall be determined in accordance with the laws of Virginia.

17.   CAPTIONS.

Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

18.   CONSTRUCTION.

Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter gender, and the use of nouns and pronouns in the singular shall include the plural and vice versa.

19.   SEVERABILITY.

Every provision of this Agreement is intended to be severable.  If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

20.   EXECUTION AND COUNTERPARTS.

This Agreement and any amendment hereof may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.  In addition, this Agreement and any amendment hereof may be executed through the use of counterpart signature pages.  The signature of any party on any counterpart agreement or signature page shall be deemed to be a signature to, and may be appended to, any other counterpart.

21.   SUCCESSORS.

Subject to the limits on transferability contained herein, each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the successors and assigns of the respective parties hereto.

IN WITNESS WHEREOF, the undersigned have each caused this Agreement to be executed as of the day and year first above written.

LTM HOLDINGS, INC., a
Virginia corporation

By: _____
Title: President

LTM INVESTMENTS, INC.,
a Nevada corporation

By: _____ VP/Sec.
Title:

68120.1/JJW:PH
8/11/93

## Exhibit A

### Addresses for Notice Purposes

If to LTM Holdings, Inc.:

        Mr. Richard F. Barry, III
        President
        LTM Holdings, Inc.
        150 West Brambleton Avenue
        Norfolk, Virginia  23510

If to LTM Investments, Inc.:

        Mr. Richard A. Fraim
        Vice President
        LTM Investments, Inc.
        3228 Channel 8 Drive
        Las Vegas, Nevada 89114



**Exhibit D to**
**Friddell Affidavit**



Exhibit E to
Friddell Affidavit





**Exhibit G to**
**Friddell Affidavit**



**OWNERSHIP OF TRADER PUBLISHING COMPANY**
**January 2006**

Landmark Target Media, Inc.
(Virginia corporation)

Landmark Target Media,
Properties, Inc.
(Virginia corporation)

LTM Investments, Inc.
(Nevada corporation)
(limited partner)

LTM Holdings, Inc.
(Virginia corporation)
(general partner)

LTM Company, L.P.
(Virginia limited partnership)

Trader Publishing Company
(Virginia partnership)

I-748685.1

**Exhibit H to**
**Friddell Affidavit**



**AFFILIATED RELATIONSHIP BETWEEN LANDMARK COMMUNITY NEWSPAPERS, INC.**
January 2006

Landmark Target Media, Inc.
(Virginia corporation)

Landmark Target Media, Properties, Inc.
(Virginia corporation)

LTM Investments, Inc.
(Nevada corporation)
(limited partner)

LTM Holdings, Inc.
(Virginia corporation)
(general partner)

LTM Company, L.P.
(Virginia limited partnership)

Landmark Community Newspapers, Inc.
(Virginia corporation)

Trader Publishing Company
(Virginia partnership)

I-748703.1

**Exhibit I to Friddell Affidavit**