IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.: 07-CV-00170-RPM-CBS

RUSSELL A. PULS, JR.,

    Plaintiff,

vs.

LANDMARK COMMUNITY NEWSPAPERS, INC.,
a Virginia corporation, and LANDMARK COMMUNITY
NEWSPAPERS OF COLORADO, INC., a Colorado corporation

    Defendants.

## MOTION TO COMPEL PURSUANT TO Fed.R.Civ.P. 37

Plaintiff, Russell Puls, by his attorneys Darling, Bergstrom & Milligan, PC, and pursuant to Fed.R.Civ.P. 37, moves to this Court for an Order compelling Defendants to disclose and produce documents withheld from production on the basis of a claim of attorney-client privilege and work product, and in support hereof state as follows:

Pursuant to D.C.COLO.LCivR 7.1, the undersigned certifies that he conferred with Defendants' attorney William Furr prior to filing the within motion to request production of the subject documents. Mr. Furr indicated that the Defendants are now willing to produce all but one memoranda withheld. To date they have not done so or identified those to be produced. Because this motion pertains to <u>all</u> of the documents withheld, it is assumed that Defendants oppose the total relief requested herein.

1

## Preliminary Statement

The issues in this lawsuit specifically involve the circumstances of Trader Publishing Company's decision to rescind its employment offer to Mr. Puls. Trader and its successor Dominion Enterprises are withholding memorandums, notes, fax coversheets and an e-mail prepared by, or sent to Susan Blake, in her capacity as Director of Human Resources for Trader Publishing Company ("Trader"). See *Defendants' Privilege Log, attached hereto as Exhibit 1.* Ms. Blake was the key go-between in communications between Defendant LCNI and Trader regarding Mr. Puls' prospective employment with Trader. It is believe that the claims of privilege and work product with respect to Blake's communications are without merit. The fact that the net of privilege was admittedly cast overly broadly only confirms the basis to believe that the remaining document(s) withheld are not really privileged communications.

## Background

Russell Puls was fired from his employer LCNI, but after an EEOC complaint was filed and settled with a "Severance Agreement." The severance agreement provided that LCNI was to give Mr. Puls a neutral reference only. Subsequently Mr. Puls was contacted by, and at their request submitted an application to, a publication run by Trader Publishing Company. Trader was, at the time, a venture owned 50% by the parent of LCNI, Landmark Communications ("Landmark"), but Landmark had officially stated its intent to divest itself of the Trader interest. Trader hired Mr. Puls, to start one week later. However, once it found out the Mr. Puls had applied to Trader, LCNI contacted Trader and related certain information, resulting in his offer of employment being rescinded.

2

## Key Facts

At the time Mr. Puls' employment offer was rescinded by Trader in January, 2006, Susan Blake served as Director of HR Field Services and West Coast Employee Relations/Attorney for Trader. *Affidavit of Susan Blake in support of Defendants' Motion for Summary Judgment ("Blake Affidavit"), at ¶1, attached hereto as Exhibit 2.* Prior to reorganization in September, 2006, Trader was a Virginia Partnership. *Blake Affidavit, ¶2.* Ms. Blake worked for Trader in Norfolk Virginia. *Id. at ¶1.* Ms. Blake is not licensed to practice law in the State of Virginia. *Deposition Transcript of Susan Blake ("Blake Depo. Trans."), 8:6-11, Exhibit 3.*

Ms. Blake was in charge of overseeing pre-employment drug testing, the company's responses to unemployment claims companywide and employee relations issues. *Blake Depo. Trans., 10:17-20.* Ms. Blake reported to Sunny Sonner who was Executive Vice President of Human Resources for Trader. *Id. at 9:11-17.* Ms. Blake first became involved in an issue at to Mr. Puls when she received an e-mail around December 27, 2005 with Mr. Puls' name attached. *Id. at 11:22 – 12:6.* The e-mail was from Gary Hibert indicating that Mr. Puls was a former Landmark employee and asked Ms. Blake how to get additional information from Landmark. *Id. at 12:3.* Mr. Hibert is the Division Head of Trader's United Parenting publications in Colorado. *Id. at 12:7-9.* Ms. Blake's interaction with Mr. Hibert had previously been on an as-needed basis relative to human resources matters. *Id. at 21-25.*

Upon receiving the e-mail from Mr. Hibert, Ms. Blake forwarded it to Melody Hester, administrative assistant to Ms. Sonner (Executive Vice President for Human Resources at

3

Trader). *Id. at 13:1-7.* In response, Ms. Hester provided Ms. Blake with a name and contact telephone number at Landmark, which she passed along to Mr. Hibert. *Id. at 14:11-15.*

Thereafter, around January 19, 2006, Ms. Blake was involved in a phone call from Landmark. *Id. at 15:17 – 16:1.* The initial call was to Ms. Blake's boss, Ms. Sonner. *Id. at 16:7-8.* Ms. Sonner requested that Ms. Blake be on the call because Ms. Blake is Director of HR Field Services and West Coast Employee Relations, and Colorado fell within her region. *Id. at 21:1-7.* The call was from Kim Hogan, who was the Human Resources Director at LCNI. *Id. at 15:22 – 16:8; Affidavit of Kim Hogan in support of Defendants' Motion for Summary Judgment, ¶1, Exhibit 4.* On the call, Ms. Hogan stated that she heard Mr. Puls had applied for employment with Trader, that he was not eligible for rehire with Landmark and that he had been separated from employment with Landmark. *Blake Depo. Trans., 16:13-17.*

Ms. Hogan recalls that Ms. Sonner had previously left her a voice mail asking for details about the situation with Mr. Puls and stating that her understanding was that Mr. Puls had left the company because of a disagreement with management. *Deposition Transcript of Kim Hogan, 52:12 – 53:16, Exhibit 5.* Ms. Hogan returned the phone call and was asked by Ms. Sonner whether information regarding the circumstances of Mr. Puls leaving the company was correct. *Id. at 53:1-16.* Ms. Hogan responded that she could not go into specifics, but that Mr. Puls had made some decisions Landmark did not agree with and were seen as unethical, and that he was terminated. *Id.*

Ms. Blake worked up memorandums and notes after the conversation. *Id. at 16:23-25.* Ms. Blake transmitted a memorandum to David Saslavsky, who worked in Trader's Colorado office. *Id. at 19:6-8.* Ms. Blake also had a telephone conversation with Mr. Saslavsky advising

4

that Trader's counsel, Billy Furr, would be contacting him regarding a deposition. *Id. at 24:20-23.* Blake ultimately made the recommendation to revoke Trader's employment offer to Mr. Puls. *Id. at 18:5-8.*

## **Basis to Compel Production**

The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor. *U.S. v. Phelan*, 3 Fed.Appx. 716, 718 (CA 10 (Colo) 2001)); *Deel v. Bank of America*, 227 FRD 456, 457-8 (W.D. Va. 2005). The burden is on the party asserting the privilege to prove that the matters are privileged. *Id.* Because the attorney-client privilege "impedes the full and free discovery of the truth, it must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Deel*, supra. Not every communications between a lawyer and her client is privileged.

Communications involving in-house counsel which are asserted to be privileged require special scrutiny. See *27 A.L.R. 5th 76, attached hereto as Exhibit 6* (careful scrutiny is required to assure that in-house counsel's law degree and office are not used to create a privileged sanctuary for corporate records). *Research Institute for Medicine & Chemistry, Inc. v. Wisconsin Alumni Research Foundation,* 114 FRD 672, 676 (W.D. Wis. 1987). In cases where in-house counsel holds other non-legal positions within the corporation, the corporation bears a burden to show that the advice given was in a legal capacity rather than in a business capacity. *North Carolina Electric Membership Corp. v. Caroline Power & Light Co.*, 110 FRD 511, 517

(M.D. NC 1986). Where in-house counsel steps out of the role of legal advisor there is no privilege. *Research Institute*, supra.

No evidence in this case suggests that Ms. Blake's involvement with Mr. Puls' employment decision was anything other than in the fulfillment of her duties as Director of Human Resources at Trader. First, Trader is a Virginia company and Ms. Blake is not licensed to practice law in Virginia. The lack of local bar membership by in-house counsel is indicative that counsel is not acting as an attorney, and therefore, that the communications at issue are not privileged. *United States v. United Shoe Machinery Corp.*, 89 F.Supp 357, 360 (D. Mass. 1950); *American Cyanamid Co. v. Hercules Powder Co.*, 211 F.Supp 85, 87 (D.C. Del. 1962).

Second, Ms. Blake was originally contacted by Gary Hibert relative to a human resource matter with Mr. Puls. Thereafter, Ms. Blake was subsequently involved in a phone conference between human resource departments at Trader and Landmark regarding Mr. Puls employment. With respect to memoranda and notes identified in the privilege log, Ms. Blake testified that she prepared those documents based upon the phone call she was on as Traders' human resources director. Nowhere in Ms. Blake's deposition did she suggest that she was providing legal advice on the phone call, or that she was advising her boss, Ms. Sonner (Executive Vice President of Human Resources for Trader), or Landmarks' Human Resource Director, Kim Hogan, on legal matters involving Mr. Puls. In fact, Ms. Blake's deposition testimony indicates that Trader's counsel, Billy Furr, would be handling legal matters relative to Mr. Puls. *Id. at 24:20-23.* None of Blake's deposition testimony was objected to on the basis of privilege. *Id.*

6

To the extent that Defendants are withholding the subject documents under a claim of work product protection, the privilege log fails to identify dates and other information that would indicate that the documents were prepared or received by Ms. Blake in the capacity of an attorney giving legal advice and that they were prepared in anticipation of litigation. *Stillwell v. Executive Fund Life Insurance Co.*, 1989 WL 78159 (D.Colo. 1989) citing *Hickman v. Taylor*, 329 U.S. 495, 508 (U.S. 1947) (setting forth that the standard for establishing protection for work product is that the document are prepared by an attorney in anticipation of litigation).

### Trader Waived Any Privilege or Protection Associated with the Documents

In her deposition testimony, Ms. Blake discusses the information contained in the memorandums and notes. See *Blake Depo. Trans., 17:10-20*. Ms. Blake's testimony in this regard was not objected to during the deposition. *Id.* A privilege may be waived during the discovery process. *23 Am. Jur. 2d Depositions and Discovery § 30*, citing *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D.Conn. 1976); *Nick Istock, Inc. v. Research-Cottrell, Inc.*, 74 F.R.D. 150 (W.D. Pa. 1977). (*Exhibit 7*). The attorney-client privilege is waived, for example, if the allegedly privileged information is disclosed by testimony in an examination before trial as to matters covered by the attorney-client privilege. *23 Am.Jur. 2d Depositions and Discovery §30*, citing *Daniels v. Hadley Memorial Hospital*, 68 FRD 583 (D.D.C. 1975). See also *Young v. Taylor*, 466 F.2d 1329, 1332 (C.A. 10 1972).

In addition, Defendants' privilege log is legally insufficient. Pursuant to Fed.R.Civ.Pro. 26(b)(5)(A), when a party withholds information under a claim of privilege or protection as trial preparation material, the party shall make the claim expressly and shall describe the documents withheld in a manner that will allow other parties to assess the applicability of the

privilege or protection. Failure to follow the Federal Rules of Civil Procedure may result in waiver of the attorney-client privilege and/or work-product protection. *Sprint Comm. Co., L.P. v. Vonage Holdings Corp.*, Slip Copy, 2007 WL 1347754 (D.Kan.). Although this result is not mandated by the federal rules, the Advisory Committee contemplated the sanction: "[t]o withhold materials without [providing notice as described in Rule 26(b)(5)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege." *Id.*

Here, the Defendants' privilege log provides no dates that the documents were prepared and provides no description at all of the information contained in the documents so that Mr. Puls and the Court can determine the validity of the privilege and protection asserted. The insufficiency of Defendants' privilege log under Rule 26(b)(5) should constitute a waiver of protection from disclosure of those documents.

## Conclusion

Special scrutiny applies to the Defendants' claim of attorney-client and work product protection for the documents identified in the privilege log. Critically, Ms. Blake was not a licensed Virginia attorney and no evidence suggests that she was acting in a capacity relative to the withheld documents other than as Trader's Director of Human Resources.

Trader has also waived any attorney-client privilege by failing to object to Ms. Blake's deposition testimony regarding her internal conversations pertaining to Mr. Puls' hiring decision, and also because Defendants failed to sufficiently identify in their privilege log the factual basis for withholding the documents. For the foregoing reasons, Defendants should be

compelled to produce <u>all</u> documents identified in their privilege log, for *in camera* review initially if so ordered.

Respectfully submitted this 11th day of June, 2007.

                                DARLING, BERGSTROM & MILLIGAN, PC

By:     /s/ Bruce G. Smith
           Bruce G. Smith
           Attorney for Plaintiff
           1515 Arapahoe Street
           Tower 1, Suite 530
           Denver, CO 80202
           Telephone: (303) 623-9133

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2007, a true and correct copy of the foregoing **MOTION TO COMPEL** was filed and served electronically and by U.S. Mail to the following:

Barbara A. Grandjean, Esq.
Jacobs, Chase, Frick, Kleinkopf & Kelley, LLC
1050 17th Street, Suite 1500
Denver, Colorado 80265

William M. Furr, Esq.
Willcox & Savage, P.C.
1800 Bank of America Center
Norfolk, Virginia 23510

Served via U.S. Mail
Russell Puls
28954 Needles Trail
Evergreen, CO 80439

/s/ Chris Allen