### § 41. Communication with in-house counsel—requirement of special scrutiny

The courts in the following cases determined, under the circumstances presented, that corporate communications involving in-house counsel which were asserted to be privileged required special scrutiny as to whether the requirements of privilege were met.

The court in North Carolina Electric Membership Corp. v Carolina Power & Light Co. (1986, MD NC) 110 FRD 511, later proceeding (MD NC) 780 F Supp 322, 1991-2 CCH Trade Cases ¶69621, motion gr (MD NC) 1992-1 CCH Trade Cases ¶69805, affd without op (CA4 NC) 995 F2d 1063, reported in full (CA4 NC) 1993-1 CCH Trade Cases ¶70264, held certain documents to or from in-house counsel to be subject to attorney-client privilege, but it noted as a factor against a finding of privilege that certain in-house counsel held other nonlegal positions within the corporation. The court stated that, in the case of such in-house counsel, the corporation bore a burden to show that advice was given in a legal, rather than business, capacity.

Although admitting that applicability of the attorney-client privilege to qualified communications between in-house counsel and management, and with the corporation's outside attorneys, is well established and must be respected, the court in Research Institute for Medicine & Chemistry, Inc. v Wisconsin Alumni Research Foundation (1987, WD Wis) 114 FRD 672, stated that careful scrutiny is required to assure that in-house counsel's law degree and office are not used to create a privileged sanctuary for corporate records, and it warned that when in-house counsel steps out of the role as legal adviser there is no privilege.

In Re Sealed Case (1984) 237 US App DC 312, 737 F2d 94, 1984-1 CCH Trade Cases ¶66062, 15 Fed Rules Evid Serv 1811, the court held that a corporation could shelter various communications with an in-house attorney under the attorney-client privilege only upon a clear showing that the lawyer gave them in a professional legal capacity, because the lawyer involved was also a company vice president and had certain responsibilities outside the lawyer's sphere. The court found that the corporation had made such a showing, and accordingly held the communications to be privileged.

In Kramer v Raymond Corp. (1992, E D Pa) 1992 US Dist LEXIS 7418, motion den (ED Pa) 1992 US Dist LEXIS 11470, motion gr, in part (ED Pa) 840 F Supp 333, CCH Prod Liab Rep ¶13779, reconsideration den, motion den (ED Pa) 840 F Supp 336, reconsideration gr (ED Pa) 840 F Supp 338, the court stated that the attorney-client privilege must be construed narrowly, especially when a corporate entity seeks to invoke the privilege to protect communications to in-house counsel, because in-house counsel may play a dual role of legal adviser and business adviser. Business communications are not protected, according to the court, merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence. Therefore, the court concluded that the corporation must clearly demonstrate that the communication in question was made for the express and primary purpose of securing legal, not business, advice.

And in Rossi v Blue Cross & Blue Shield (1989) 73 NY2d 588, 542 NYS2d 508, 540 NE2d 703, noting that the scope of the attorney-client privilege is limited to that which is necessary to achieve its purpose, the court warned that the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure. In holding a memorandum from a staff attorney to several corporate officers to be privileged, the court recognized that the attorney-client privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel. The court acknowledged, however, that, unlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business and legal responsibilities. Thus, according to the court, whether or not they are officers, their day-to-day involvement in their employers' affairs may blur the line between legal and nonlegal communications, and their advice may originate not in response to the client's consultation about a particular problem but with them, as part of an ongoing, permanent relationship with the organization.

EXHIBIT 6