IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.:  07-cv-00170-RPM-CBS

RUSSELL A. PULS, JR.,

    Plaintiff,

v.

LANDMARK COMMUNITY
NEWSPAPERS, INC., a Virginia corporation, and
LANDMARK COMMUNITY
NEWSPAPERS OF COLORADO, INC.,
a Colorado corporation,

    Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE FIRST AND SECOND CLAIMS FOR RELIEF IN THE AMENDED COMPLAINT

---

### PRELIMINARY STATEMENT

Plaintiff Russell A. Puls filed his Amended Complaint against Defendants Landmark Community Newspapers, Inc. ("LCNI") and Landmark Community Newspapers of Colorado, Inc. (collectively referred to as "Defendants"), alleging that (1) Defendants breached a severance agreement; (2) Defendants intentionally interfered with contractual relations; and (3) Defendants retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff is a former employee of LCNI.  All three of the claims are based on LCNI's sharing of information regarding Plaintiff's employment with its affiliate/affiliated entity Trader Publishing Company ("Trader").  Plaintiff asserts that these communications violated a

{00219314.DOC}

severance agreement that he entered into with LCNI; however, he completely ignores the fact that the agreement contemplated such sharing of information because LCNI's affiliates/affiliated entities were identified as parties to the agreement and were entitled to know of its terms.

Plaintiff was previously employed as Advertising Sales Director for LCNI. LCNI is a wholly-owned subsidiary of Landmark Communication, Inc. ("LCI"). LCI is a privately-held media company with interests in newspapers and special publications, TV broadcasting, cable programming, outdoor advertising, and education. LCI operates through its many subsidiaries and currently employs over 5,000 people.

Plaintiff was hired on July 2, 2001. On August 26, 2005, LCNI discharged Plaintiff for legitimate, nondiscriminatory job-related reasons. LCNI and Plaintiff entered into a severance agreement entitled "Severance Agreement, General and Special Releases" ("Severance Agreement"). The Severance Agreement broadly defined "LCNI" to include its affiliates and affiliated entities and provided that Plaintiff would be permanently separated from employment with "LCNI," as defined in the agreement. It further provided that Plaintiff would release any Equal Employment Opportunity Commission ("EEOC") claim against "LCNI" and that "LCNI" would provide Plaintiff with neutral job references.

In 2005, after Mr. Puls applied for a position with Trader Publishing Company, Trader contacted LCNI for a reference. Information about former employees was frequently shared within the Landmark family and was appropriate under the terms of the Severance Agreement.

Ms. Kim Hogan, the Human Resources Director for LCNI, contacted Ms. Sunny Sonner, the Executive Vice President of Human Resources for Trader. Ms. Hogan informed Ms. Sonner that Plaintiff had been discharged from LCNI and that he was subject to a Severance Agreement

that provided for permanent separation of employment with Landmark. *See* Affidavit of Kim Hogan, attached as Exhibit A-1.

During the application process, Mr. Puls had told Trader that he had voluntarily resigned from employment at LCNI and had worked out a two-week notice period with his manager. He also reported that he did not have a severance agreement. Upon learning that Mr. Puls had made material misrepresentations in his application for employment, Trader withdrew its offer to him. *See* Affidavit of Susan Blake, attached as Exhibit A-2.

On January 5, 2007, Plaintiff filed his Complaint with the District Court of Jefferson County, alleging breach of contract, intentional interference with contractual relations, and Title VII retaliation. Defendants timely removed the case to federal court.

The First and Second Claims for Relief fail because LCNI and Trader are both part of the Landmark group and they are affiliates/affiliated entities under the Severance Agreement: 1) LCNI did not breach the Severance Agreement by sharing information with Trader because Trader was an affiliate/affiliated entity under the Severance Agreement and such communications were contemplated by the agreement; and 2) LCNI did not intentionally interfere with contractual relations by informing Trader of the Severance Agreement because it did not employ wrongful means when it informed its affiliate/affiliated entity of truthful, basic facts.

## STATEMENT OF FACTS

Defendants list the following facts as to which there is no genuine issue:

1. Plaintiff was employed by LCNI until August 26, 2005, when he was discharged. *See* Amended Complaint and Jury Demand at ¶ 4.

2. Following the termination, LCNI and Plaintiff entered into a Severance Agreement on October 17, 2005. *See* Amended Complaint at ¶ 6.

3. "LCNI" is broadly defined within the Severance Agreement to include:

> Landmark Community Newspapers, Inc., Landmark Community Publications, Inc., their past, present and future agents, employees, directors, officers, shareholders, affiliates, insurers, reinsurers, affiliated corporations or other entities, successors in interest, and newspapers (included but not limited to the newspapers referred to as Evergreen Newspapers) (referred to herein collectively as "LCNI").

*See* Severance Agreement, Introduction (attached as Exhibit A to Amended Complaint).

4. The Severance Agreement contains a General Release that provides that "Puls agrees, for himself, and his heirs, representatives, successors, and assigns, that he had been *finally and permanently separated* from employment with LCNI as of August 26, 2005." *See* Severance Agr. at ¶ B.4 (emphasis added).

5. The Severance Agreement provides that "LCNI" would give Plaintiff a neutral reference. *See* Severance Agr. at ¶ B.3.

6. In or before January of 2006, Puls applied for a position with The Colorado Parent, a publication of United Parenting Publications, which is a division of Trader. *See* Amended Complaint at ¶ 9.

7. Upon inquiry by Trader, LCNI notified Trader that LCNI had discharged Plaintiff. *See* Hogan Aff. at ¶ 11.

8. Trader withdrew its offer of employment based on information that it received from LCNI. *See* Amended Complaint at ¶ 10.

{00219314.DOC}    4

9.    During the relevant timeframe, LCNI was a wholly-owned subsidiary of Landmark Communications, Inc. ("LCI"). *See* Affidavit of Guy R. Friddell, attached as Exhibit A-3, at ¶ 2.

10.   During the relevant timeframe, Trader was jointly owned by LCI and another entity. *See* Friddell Aff. at ¶ 3.

11.   In September of 2006, Trader finalized a corporate reorganization. Following the reorganization, LCI retained ownership of United Parenting Publications. *See* Friddell Aff. at ¶ 11.

## ARGUMENT

**I.    STANDARD FOR SUMMARY JUDGMENT.**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

The United States Supreme Court has stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party to return a jury verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citations omitted). In addition, the moving party can satisfy its burden of showing absence of genuine issue of material fact by pointing out the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

II. **PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS BREACHED THE SEVERANCE AGREEMENT.**

In his Complaint, Plaintiff alleges that LCNI breached the Severance Agreement by notifying Trader that Plaintiff had been discharged and that he had signed a Severance Agreement. However, the Severance Agreement defines "LCNI" as including affiliates of LCNI, as well as companies and other entities affiliated with LCNI. Therefore, communications between affiliates and affiliated entities were contemplated under the agreement and completely appropriate under these circumstances. Furthermore, it is Plaintiff who first breached the Severance Agreement by applying for employment with Trader, which he knew was affiliated with LCNI.

    A. **Plaintiff Cannot Establish Breach of Contract Because Trader Publishing Company is an Affiliate and/or an Entity Affiliated with LCNI under the Terms of the Severance Agreement.**

        1. Trader Publishing Company is an "Affiliate" of LCNI for Purposes of the Severance Agreement.

The Severance Agreement defines LCNI broadly to include its "affiliates." The term "affiliate" is not defined in the Severance Agreement. The Colorado legislature has defined the term as "any person that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, the person specified." Colorado Business Corporation Act, C.R.S. § 7-101-401(2) (2006). In 2000, the Colorado Court of Appeals applied this definition when interpreting a non-compete agreement in *National Propane Corporation v. Miller,* 18 P.3d 787 (Colo. App. 2000). The court found that the two companies were under common control and therefore affiliates under the agreement. *Id.* at 786.

During the relevant timeframe, LCNI and Trader were affiliates for purposes of the Severance Agreement, as each was controlled by a common parent company, LCI. In January of 2006, LCNI was a wholly-owned direct subsidiary of LCI. In January of 2006, Trader was a partnership that was ultimately fifty percent-owned by LCI and ultimately fifty percent-owned by LCI's partner, Cox Communications, Inc. ("Cox"). LCI and Cox created Trader as a partnership in 1991.[1] *See* Trader Partnership Agreement, attached as Exhibit B to Friddell Aff. No other entity had greater control over Trader than LCI.

It is important to note that the Colorado Business Corporation Act does not require an entity to own *all* or even *a majority* of the assets of another entity in order to control it. Indeed, there are many ways in which LCI could unilaterally control Trader. For example, LCI had the authority to elect three out of six of the members of the Board of Directors of Trader. *See* Trader Partnership Agr. at ¶ 8(A)(1). No action could be taken without the consent of at least one of the members of the Board of Directors elected by LCI. *See* Trader Partnership Agr. ¶ 8(A)(4). As such, LCI could exercise veto power over any action that the Board of Directors of Trader considered.

LCI was also able to elect the Chairman of the Board every other year. *See* Trader Partnership Agr. at ¶ 8(D)(1). The Chairman set the agenda for the Board meetings. *See* Trader Partnership Agr. at ¶ 8(D)(2). In addition, an LCI board member served on any of the two-member Board committees established, including the Executive Committee. *See* Trader

---

[1] LCI and Cox later agreed to divide Trader's assets and the reorganization was finalized in September of 2006. Colorado Parent is currently 100% owned by LCI.

Partnership Agr. at ¶ 8(F)(1-2). The Executive Committee was only authorized to act by unanimous vote. *See* Trader Partnership Agr. at ¶ 8(F)(4).

Because Trader was an affiliate of LCNI, it was a party to the Severance Agreement and LCNI did not breach the Severance Agreement by disclosing basic information regarding Plaintiff's former employment and subsequent separation to its affiliate, Trader. Such communications were contemplated under the terms of the Severance Agreement and completely appropriate under the circumstances.

    2.  Trader Publishing Company is an "Affiliated Entity" of LCNI for Purposes of the Severance Agreement.

Even if Trader were somehow determined not to be an affiliate of LCNI, the evidence establishes that Trader is an entity affiliated with LCNI. Under the Severance Agreement, the definition of LCNI also includes "affiliated corporations and other entities." Although "affiliated entity" is not defined in the Severance Agreement, its addition makes it clear that the intention was to include entities that are related to LCNI, but that may not qualify as "affiliates" under the Colorado Business Corporation Act. Trader was clearly an entity affiliated with LCNI under the Severance Agreement.

Trader and LCNI were both Landmark entities. Trader was referenced in LCNI's human resources and training materials. *See* Hogan Aff. at ¶ 11. The Human Resources departments at both entities frequently shared information about former employees. *See* Hogan Aff. at ¶ 10, Blake Aff. at ¶ 2. In addition, they worked together to develop training plans and other materials for the Landmark family of businesses. *See* Hogan Aff. at ¶ 10. Trader considered LCNI to be an affiliated entity and LCNI considered Trader to be an affiliated entity. *See* Blake Aff. at ¶ 2, Hogan Aff. at ¶ 10.

Plaintiff himself knew about the relationship between LCNI and Trader. *See* Hogan Aff. at ¶ 11. During his employment, Plaintiff viewed a video entitled "What is Landmark Communications?" *See* Hogan Aff. at ¶ 11. The video listed Trader as a member of the Landmark family of businesses. *Id.* Plaintiff also attended a leadership training session for managers of Landmark entities during which Trader was identified as part of the Landmark family of businesses. *See* Hogan Aff. at ¶ 11. Accordingly, Trader was an entity "affiliated" with LCNI and Plaintiff knew it.

Because Trader was an affiliated entity of LCNI, it was identified as a party to the Severance Agreement. Consequently, LCNI could not possibly have breached the Severance Agreement by disclosing information regarding Plaintiff's employment and subsequent discharge to Trader, an affiliated entity. Such communications were contemplated under the Severance Agreement and perfectly appropriate under the circumstances.

### B.   Plaintiff Cannot Prevail on a Breach of Contract Claim Because He First Breached the Severance Agreement by Applying for Employment with Trader.

It is well-settled contract law that one who first breaches a contract cannot thereafter sue the other party for breach of the same contract. *F.D.I.C. v. Everett A. Holseth & Co.,* 36 F.3d 1004, 1007 (10th Cir. 1994); *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir. 1987). In this case, Plaintiff first breached the Severance Agreement by applying for employment with Trader, an affiliate of/entity affiliated with LCNI.

The Severance Agreement specifically provides that Plaintiff agreed to be permanently separated from "LCNI," as "LCNI" is defined in the Severance Agreement. Trader is included in the definition of "LCNI" in the Severance Agreement because it is affiliated with LCNI. The

{00219314.DOC}                                                9

Severance Agreement was written to keep Plaintiff from applying for employment at another Landmark entity. To allow Plaintiff to re-apply for employment with another Landmark entity after signing an agreement that provided for permanent separation with LCNI's affiliates would create an anomalous result. Plaintiff's application for employment with Trader breached the provision of the Severance Agreement that required him to be permanently separated from LCNI, LCNI's affiliates and entities affiliated with LCNI.

Because Plaintiff first breached the Severance Agreement by attempting to enter into an employment relationship with Trader, he is prohibited, as a matter of law, from pursuing a breach of contract claim against Defendants.

### III. PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS INTENTIONALLY INTERFERED WITH CONTRACTUAL RELATIONS.

#### A. Plaintiff Cannot Establish International Interference with Contractual Relations Because He Cannot Show Wrongful Interference.

In his second claim for relief, Plaintiff alleges that LCNI intentionally interfered with Plaintiff's employment contract with Trader by informing Trader of the Severance Agreement. However, LCNI cannot possibly be liable for intentional interference with contractual relations for communicating with Trader regarding Plaintiff's employment, as this was contemplated under the terms of the Severance Agreement. Trader was bound by the Severance Agreement as an affiliate or entity affiliated with LCNI. Therefore, the Severance Agreement contemplated disclosure of such information to Trader and the communications between LCNI and Trader could not possibly be wrongful. In addition, it was LCNI's practice to share basic, truthful information about former employees with its sister companies.

**B.  Plaintiff Cannot Establish Intentional Interference with Contractual Relations Because He Cannot Meet the High Standard Established by Colorado Courts for Interference with an At-Will Contract.**

Furthermore, according to Colorado law, the standard for intentional interference with contractual relations is higher when the contract allegedly interfered with is an at-will employment contract. Trader's offer to Plaintiff was for at-will employment. *See* Blake Aff. at ¶ 6. In cases of intentional interference with at-will employment contracts, Colorado law requires the plaintiff to show "wrongful means, such as physical violence, fraud, civil suit, or criminal prosecution." *Electrolux Corporation v. Lawson*, 654 P.2d 340, 341-42 (Colo. App. 1982) (disagreed with on other grounds by *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989)).

Because Plaintiff has failed to allege any facts that would establish that LCNI used any of the wrongful means contemplated in *Lawson*, his claim of intentional interference with contractual relations must fail.

## CONCLUSION

For the foregoing reasons, the First and Second Claims for Relief in the Amended Complaint fail and Defendants respectfully request that this court grant its Motion for Summary Judgment and enter judgment in favor of Defendants and against Plaintiff on the First and Second Claims for Relief.

DATED: June 27, 2007.

        s/ Barbara A. Grandjean
Barbara A. Grandjean
**JACOBS CHASE FRICK KLEINKOPF & KELLEY, LLC**
1050 17th Street, Suite 1500
Denver, Colorado 80265
Phone: (303) 685-4800
Fax: (303) 685-4869
E-mail: bgrandjean@jacobschase.com

William M. Furr (VSB#29554)
**WILLCOX & SAVAGE, P.C.**
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
Telephone: (757) 628-5651
Fax: (757) 628-5566
E-mail: wfurr@wilsav.com

**ATTORNEYS FOR DEFENDANTS**

{00219314.DOC}  12

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2007, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE FIRST AND SECOND CLAIMS FOR RELIEF IN THE AMENDED COMPLAINT** was served electronically on the following:

Bruce G. Smith, Esq.
Darling, Bergstrom & Milligan, P.C.
1515 Arapahoe Street
Tower I, Suite 530
Denver, Colorado 80202



s/ Teresa A. Mercill