**LANDMARK**
Community Newspapers, Inc.   P.O. BOX 549, Shelbyville, KY 40066-0549 · 502-633-4334 (FAX: 502-633-4482)

May 1, 2006

Ms. Holly B. Romero
Supervisory Investigator
Denver Field Office - 541
303 East 17th Avenue, Suite 510
Denver, CO  80203

     Re:    ***Russell A. Puls v. Landmark Community Newspapers, Inc.***
             ***EEOC Charge No. 541-2006-00539***

Dear Ms. Romero:

     This letter serves as the initial position statement of Respondent Landmark Community Newspapers, Inc. ("LCNI") with regard to the above-referenced matter. The response does not constitute a waiver of any privilege, objections to the timeliness of the Charge, or any other defenses which may be asserted in the future. While believed to be true and correct in all respects, this Response and Statement of Position does not constitute an affidavit and is not intended to be used as evidence in any administrative or court proceeding respecting the matters raised in the above Charge. Respondent has worked diligently and in good faith to investigate this matter as fully as possible. However, Respondent reserves the right to supplement the record with any newly-discovered information or evidence.

### Response to Russell Puls' Charge of Discrimination

**Charging Party's Allegation No 1:**

     On or about January 19, 2006, I was the recipient of bad references provided by respondent.

**Response:**

     Respondent denies the allegations contained in Allegation No. 1.

     To understand the circumstances surrounding this Charge, it is necessary to discuss Russell Puls' termination from LCNI. On August 26, 2005, Mr. Puls was terminated for misconduct after a thorough investigation revealed that Mr. Puls had directed LCNI sales representatives to use an unauthorized script while pitching sales calls. The script was directed at selling advertisements in connection with a local fire department's annual event called Big Chili. The threatening nature of the script is in contravention of LCNI's ethics and company philosophy.

     The script begins by telling the customer about the Big Chili annual event. After the initial "no" response, the sales representative is directed to push a little harder.

**EXHIBIT 15**

After the second negative response from the customer, the script directed the sales representative to say the following:

> Well, that's really unfortunate that you can't support customers that spend money with you. I'll be passing this on to the fire chiefs at each of the departments. Please let me know if you have a change of heart.
>
> Thank you.

For your consideration, I've attached a copy of the script as Exhibit 1.

LCNI conducted an extensive investigation regarding the "Big Chili" script. LCNI interviewed Mr. Puls. He admitted to directing sales representatives to use the unauthorized script when making sales calls. He stated he had used a similar script with an old employer and decided unilaterally to use it at LCNI.

LCNI also interviewed several employees who stated that Mr. Puls, during a company meeting, directed them to use the script and follow it word-for-word. One employee, Sue Ellen Peck, told Puls that she didn't feel comfortable using the script because she felt it was very threatening. Mr. Puls dismissed her concerns and instructed her to use the script verbatim.

Due to these actions, Mr. Puls was terminated. Mr. Puls filed a Charge with the EEOC alleging that he was terminated in retaliation for having objected to discriminatory acts. LCNI denied any retaliation, but to avoid litigation, time and expense, Mr. Puls and LCNI and its related entities entered into a Severance Agreement and Release, a copy of which is attached as Exhibit 2. Mr. Puls withdrew his EEOC Charge.

In this agreement, Mr. Puls agreed that he was "permanently separated from employment with LCNI" and related entities.[1] Despite this agreement, Mr. Puls applied for a position as an advertising manager with Trader Publishing ("Trader"). Trader is a subsidiary of Landmark Communications, Inc. ("Landmark"), which also owns LCNI. This is a violation of the Severance Agreement and Release.

During the interview process, Trader became aware that Mr. Puls had previously worked for another Landmark-owned company, LCNI. Trader contacted LCNI to inquire about Mr. Puls' employment. The human resources representative for LCNI provided information concerning Puls' employment with LCNI to the human resources representative for Trader. Obviously, two companies owned by the same parent corporation can discuss employment issues, including the termination of an employee interviewing for a position with the sister company. Landmark, as the parent, would expect full disclosure between related entities. Otherwise, Landmark would be rehiring an employee it just terminated.

---

[1] The exact language states "Landmark Community Newspapers, Inc., Landmark Community Publications, Inc., their past, present and future agents, employees, directors, officers, shareholders, affiliates, insurers, reinsurers, affiliated corporations or other entities, successors in interest, and newspapers (included but not limited to the newspapers referred to as Evergreen Newspapers) (referred to herein collectively as "LCNI").

**Charging Party's Allegation No. 2:**

This action was in Retaliation for my having objecting to discriminatory acts perpetrated by Respondent, in violation of Title VII of the Civil Rights Act of 1964, as amended.

**Response:**

Respondent denies the allegations contained in Allegation No. 2.

On several occasions, Mr. Puls had voiced his concerns about situations where he believed there might be discrimination. None of these alleged instances involved Mr. Puls himself. Each time that Mr. Puls voiced his beliefs, those allegations were investigated and dealt with promptly and appropriately.

Mr. Puls acknowledged that he understood he could voice such concerns to his publisher, regional manager, and/or the H.R. director or president of LCNI. (See signed statement, attached as Exhibit 3). And, as stated above, he did so on several occasions with no adverse consequences to his employment.

There is no basis to Mr. Puls' charge that LCNI provided bad references in retaliation for his having objected to alleged discriminatory acts. Rather, the evidence clearly shows that LCNI had legitimate business reasons for providing information to its sister company, Trader, concerning Mr. Puls' employment.

With respect EEOC Charge No. 541-2006-00539, Respondent respectfully requests that it be dismissed on the merits, as being without probable cause. If you need any further information to facilitate dismissal of this Charge, please contact me.

Sincerely,

*Kim Hogan*

Kim Hogan

cc: Mr. Michael Abernathy, President
    Ashley C. Pack, Esq.