**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No.:  07-cv-00170-RPM-CBS

RUSSELL A. PULS, JR.,

        Plaintiff,

v.

LANDMARK COMMUNITY NEWSPAPERS, INC., a Virginia corporation, and
LANDMARK COMMUNITY NEWSPAPERS OF COLORADO, INC., a Colorado corporation,

        Defendants.

---

**REPLY BRIEF TO PLAINTIFF'S MEMORANDUM**
**IN OPPOSITION TO SUMMARY JUDGMENT**

---

      Defendants, Landmark Community Newspapers, Inc. ("LCNI") and Landmark Community Newspapers of Colorado, Inc., submit the following reply to Plaintiff Russell A. Puls' Response to Motion for Partial Summary Judgment.  This memorandum shall address the arguments set forth by the Plaintiff in his memorandum and clarify certain points.

**DISCUSSION**

**1.**      <u>LCNI did not retroactively modify the reason for Plaintiff's termination by making a minor change in the language of the Severance Agreement.</u>

      In its Response, Plaintiff assigns great importance to the fact that LCNI agreed to change the Severance Agreement to read, "Puls separated from his employment with LCNI."  Plaintiff argues that this language represents the parties' agreement to represent

the separation as one that Puls himself initiated going forward.  However, the parties certainly did not agree to represent the separation as a resignation and the insignificant change in the Severance Agreement does not represent such an agreement.

In her deposition, Ms. Hogan specifically addresses this issue:

> Q.  Ms. Hogan, if that's the case, would that appear to reflect an intent on Mr. Puls' part that the agreement reflect that he initiated the separation?
>
> A.  I don't see it that way at all.  I see it as he separated from our company.  I don't see it as saying why he separated, if it was his choice or our choice.
>
> Q.  Okay.  Well, if the original language was that Mr. Puls was separated, and it was changed to state that he separated, doesn't that appear to reflect an intent that he initiated the separation?
>
> A.  In my opinion, no, because we have people who – who choose to separate from the company and people that we choose to have separated from the company that sign the same agreement, so I don't see it that way.  I just see it as saying that he separated from the company, regardless of whose decision it was that he separate.

Hogan deposition, 68 and 79, 12-25 and 1-6.  Clearly, Ms. Hogan assigned no importance to the change in the language because many employees who separate from LCNI sign the same agreement with the same language regardless of whether they resign or are terminated.  Furthermore, Plaintiff does not present any evidence that he indicated to LCNI at the time that he intended to enter into an agreement with LCNI to represent his termination as a resignation going forward.  Absent such evidence, it is erroneous to suggest that LCNI was somehow bound to represent Plaintiff's termination as a resignation.

Plaintiff cites two cases, *Mattera v. Gambro, Inc.* 94 Fed.App. 725 (10th Cir. 2004) and *Rockman v. Sweetwater School District No. 1*, 826 F. Supp. 1328 (D. Wyo. 1993).  These cases, however, involve situations in which the employer and employee <u>explicitly agreed</u> to represent terminations as resignations.  In *Mattera*, the employee "asked for the courtesy to resign" and the employer granted the request.  In *Rockman*, the employer and employee had an agreement that  1) the employer would expunge the employee's personnel file of all negative information and that the file would reflect that the employee had resigned; 2) the employer would formally re-hire the employee and then accept her resignation to allow the employee to truthfully state that she had resigned; and 3) the employer would respond to calls from potential employers in accordance with the information in the employee's revised personnel file.

Plaintiff cannot compare the situation in the present case to the facts in either of these two cases.  In the present case, there was no mention of re-characterizing the separation and certainly no agreement to do so.  Ms. Hogan has stated that she essentially views both the prior version and revised version of the Severance Agreement as neutral on the issue of who initiated the separation.  Even if Plaintiff viewed this differently, his unilateral understanding is insufficient to show that there was an agreement.[1]

---

[1] Even if Plaintiff could somehow show that the parties did agree to represent his termination as a resignation, it is irrelevant for purposes of this case because LCNI only disclosed the fact that Plaintiff had been discharged to its affiliate, Trader Publishing Company ("Trader").  Trader was included in the Severance Agreement and it was therefore appropriate for LCNI to share information about Plaintiff's discharge, as described in detail in Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, as well as in this Reply.

**2.      The Severance Agreement clearly intended to bar Plaintiff from employment with its affiliated and affiliated entities and it was therefore appropriate to share relevant, truthful information regarding Plaintiff's discharge and the Severance Agreement with Trader.**

The evidence establishes that Trader was LCNI's affiliate for purposes of the Severance Agreement because Landmark Communications, Inc. was able to control both companies through its ownership of LCNI and its half-ownership of Trader.  Plaintiff inaccurately portrays LCI as a massive holding company that maintained only a passive investment in Trader.  This is simply not the case.  LCI played an active role in controlling Trader from the time of its inception to its reorganization (indeed, LCI drove both the creation of Trader in 1991 and the division of its assets in 2006).

LCI was a fifty percent owner of Trader for the entire duration of Trader's existence.  During this period, LCI had the ability to control Trader by 1) electing half of the members of the Board of Director; 2) vetoing actions taken by the Board; 3) electing a member to serve as Chairman of the Board every other year; and 4) vetoing actions taken by and Board Committees, including the Executive Committee.  In addition to these official means of control, LCI exercised significant control over Trader in other, less formal ways, such as through human resources directives and shared training plans.  Both companies are located in Norfolk, Virginia and their managers and executives consult with each other frequently on a wide variety of issues.  Both companies use the same outside law firms and LCI had access to Trader's confidential information.  For these reasons, LCNI and Trader are affiliates for purposes of the Severance Agreement.

Plaintiff states that a fifty percent owner does not "control" a company and it cites *Am.Jur.2d Securities Regulation – Federal § 8*.  This source, however, refers specifically

to situations where the ownership split is 51/49, not 50/50. Additionally, it does not state that a forty-nine percent owner cannot have control over the company. It merely states that it would "not necessarily, in itself, make a shareholder a controlling person." Id. In this case, LCI had not only a fifty percent ownership interest, it also had control over Trader in the ways discussed above. Plaintiff cites no other pertinent authority to support its position that a fifty percent owner cannot control another company.

Plaintiff points to a statement made by an LCNI attorney that Plaintiff disparaged LCNI to Trader as evidence that Trader and LCNI were not the same entity. Plaintiff must misunderstand Defendants' position on this issue. Defendants' position is not that Trader and LCNI are the same entity – it is that they are affiliates/affiliated entities for purposes of the Severance Agreement.[2] Therefore, the fact that an LCNI attorney stated that Plaintiff disparaged LCNI to Trader is not an admission, nor does it reflect any belief that LCNI and Trader are not affiliated entities. Plaintiff later repeats that "[Plaintiff] and LCNI's prior counsel considered Trader to be a separate company for purposes of the Agreement." Plaintiff's Memorandum at 14. Again, Defendants' position is not that LCNI and Trader was the same company – it is that LCNI and Trader are affiliates/affiliated entities.

Plaintiff relies heavily on his view of the "surrounding circumstances" – including the "small" amount of the monetary settlement ($8,250.00), his lack of knowledge regarding other Landmark companies, and the fact that Trader itself did not pay Plaintiff

---

[2] Plaintiff's position is that "affiliated entities" of LCNI are not included in the Severance Agreement because they are "redundant." Defendants disagree with this point and explained the meaning of "affiliated entities" in its Memorandum of Law in Support of Motion for Summary Judgment.

any money in consideration for the Severance Agreement – to support his position that LCNI breached the Severance Agreement (and that Plaintiff did not).  Ultimately, however, none of these details change the relationship between LCI, LCNI, and Trader and the plain language of the Severance Agreement.  LCNI and Trader are affiliates for purposes of the Severance Agreement because both entities are controlled by LCI.  Therefore, it is Plaintiff, not LCNI, who violated the Severance Agreement.

In the Severance Agreement that Plaintiff signed, he agreed that he was "finally and permanently separated from employment with LCNI."  Severance Agreement at ¶ A.4.  LCNI is defined in the Severance Agreement to include affiliates/affiliated entities, such as Trader.  As such, it was or should have been clear to Plaintiff that he was barred from re-applying for employment at those entities.  Although he asserts that this language was not sufficiently definite to constitute a waiver, this argument is without merit.  The "permanently separated" language in the Severance Agreement clearly establishes that Plaintiff could not accept future employment with LCNI, as it is defined in the Severance Agreement.   Plaintiff is also incorrect in asserting the practical effect of this interpretation is that he could not apply for employment in any other entity in which Landmark was *invested* – the bar was on affiliates and affiliated entities, which means entities that LCI *controlled*.

3.    **LCNI appropriately shared information with Trader because Plaintiff was barred from employment with LCNI's affiliates and affiliated entities under the Severance Agreement.**

LCNI's motive in sharing truthful, relevant facts regarding Plaintiff's discharge with Trader is clear.  LCNI discharged Plaintiff and entered into a Severance Agreement

that prohibited him from future employment with its affiliates and affiliated entities. When LCNI learned that Plaintiff had applied for employment with Trader, it notified Trader that Plaintiff had previously been discharged and was barred from re-hire based on his Severance Agreement.[3]

Plaintiff states that "Hogan's knowledge at the time was that Trader was being divested by Landmark, thereby removing any interest, already remote, that LCNI would have in whether he worked there." Plaintiff's Memorandum at 17. This is irrelevant – Hogan's knowledge at the time was that Plaintiff was applying for employment with an affiliate/affiliated entity of LCNI, thereby violating the Severance Agreement. This is the knowledge that she acted upon. Furthermore, LCI did not lose its interest in Trader publications in 2006. To the contrary, after Trader's assets were separated between LCI and Cox Communication, Colorado Parent, the publication with which Plaintiff sought employment, became wholly-owned by LCI. As such, it remained affiliated with LCNI for purposes of the Severance Agreement.

## CONCLUSION

LCNI acted in accordance with the Severance Agreement when it informed Trader of truthful facts concerning Plaintiff's discharge. Plaintiff cannot establish that LCNI breached the Severance Agreement, that it intentionally interfered with contractual relations, or that it retaliated against him by communicating with its affiliate/affiliated entity.

---

[3] The fact that LCNI did not immediately forward a copy of the Severance Agreement to Trader is immaterial. In fact, Trader's reliance on Ms. Hogan's bald assertion that there was a Severance Agreement prohibiting re-employment demonstrates the close relationship between the two affiliated companies.

For the foregoing reasons, as well as the reasons stated in Defendants'
Memorandum of Law in Support of Summary Judgment, Defendants respectfully request
that this court grant its Motion for Summary Judgment.

DATED:  July 24, 2007.

s/  Barbara A. Grandjean
Barbara A. Grandjean
JACOBS CHAE FRICK KLEINKOPF & KELLEY, LLC
1050 17th Street, Suite 1500
Denver, CO  80265
Telephone:     303-685-4800
Fax:  303-685-4869
E-mail:        bgrandjean@jcfkk.com

William M. Furr (VSB#29554)
Ruby W. Lee (VSB#71202)
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
Telephone:  757-628-5651
Fax:  757-628-5566
E-mail:        wfurr@wilsav.com

**Attorney for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2007, I electronically filed the foregoing **REPLY BRIEF TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **William M. Furr**
  wfurr@wilsav.com,cwilson@wilsav.com

- **Bruce G. Smith**
  bsmith@dbm-law.com,callen@dbm-law.com,banderson@dbm-law.com

s/ Barbara A. Grandjean
Barbara A. Grandjean
JACOBS CHAE FRICK KLEINKOPF & KELLEY, LLC
1050 17th Street, Suite 1500
Denver, CO  80265
Telephone:     303-685-4800
Fax:  303-685-4869
E-mail:          bgrandjean@jcfkk.com